# The Pennsylvania Railroad Company versus Kerr.[1]

1. In determining accountability for the consequences of a wrongful act, the immediate, and not the remote, cause is to be considered.

2. An engine on a railroad negligently set fire to a house, the fire from the house communicated to another at some distance from it, which was consumed with all its contents. *Held*, that the railroad company were not liable for damages for the last building and its contents.

3. Every one has to take the risks of the vicissitudes of organized society.

4. The person committing the first act of negligence is not liable for all its consequences.

| | |
|---|---|
| 62 | 353 |
| 135 | 57 |
| 135 | 59 |
| 62 | 353 |
| 149 | 45 |
| 62 | 353 |
| 172 | 652 |
| 62 | 353 |
| 207 | 1633 |
| 62 | 353 |
| 29 SC | 3235 |

May 20th and 21st 1870. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Huntingdon county*: No. 25, to May Term 1870.

This was an action on the case brought June 12th 1868 by William Kerr against the Pennsylvania Railroad Company.

[1] I am indebted to Judge Taylor and William. Dorris, Esq., for the report of this case.—P. F. S.

12 P. F. SMITH—23

[Pennsylvania Railroad Co. *v.* Kerr.]

The action was to recover for the loss of the plaintiff's furniture in a hotel near the Pennsylvania Railroad, which was destroyed by fire from negligence, as he alleged, of the defendants' servants in running their locomotive. The fire was first communicated to a warehouse and from that to the hotel. The accompanying draft will exhibit the relative location of the hotel, warehouse and railroad.

The facts and questions in the case are fully set forth in the charge of the court (Taylor, P. J.) as follows :—

" This is an action on the case in which the plaintiff claims in damages from the defendants for the loss of his household furniture and goods, and a large amount of liquors and other property, alleged to have been consumed by fire, on the 28th of April 1868, with the house which he occupied at Mill Creek, the fire having been occasioned, as he alleges, by the negligence of the defendants in the use of one of their engines.   It is claimed, in his declaration, as the ground of his action, that the defendants ' did not use due and proper care that the property of the said plaintiff, at Mill Creek aforesaid, should not be burned, injured and destroyed, or in any way damaged by fire from the locomotive engines of and belonging to the said company, but wholly neglected so to do, and suffered and permitted one of their locomotive engines to be so negligently and unskilfully conducted and managed on the track of their said railroad, on the 28th of April, A. D. 1868, by and near to the buildings occupied, and property owned and enjoyed by said plaintiff, at the village of Mill Creek aforesaid ; and also so negligently suffered and permitted the said engine to be and remain in such bad condition, and the fire therein to be so insufficiently secured that by reason of the negligence of the said company in that behalf, that the property of the said plaintiff, to wit, ' one lamp,' and various other articles specified, ' together with divers other articles, &c., were set on fire and wholly destroyed.' This is the ground of claim, as now urged.   It is averred and set out in the declaration, as a further ground of claim, that ' by means of the said premises, the said plaintiff was deprived of divers great gains, profits and advantages which he might and otherwise would have derived and acquired, and of the use of the house in which he was then and there residing ; and also by means of the said premises he has incurred great expense, &c.'   This latter branch of the claim is now withdrawn, and any evidence offered to sustain it, and we are asked by him ' to instruct you to disregard the evidence offered as to the probable gains and profits of the plaintiff from keeping the hotel, as forming any element of his damages, and to instruct you if you find for the plaintiff, your verdict should be for the value of the property burned and interest,' which we accordingly do.

" This, then, is the claim and the ground of it.   Before pro-

ceeding to consider the case thus presented, a general statement of some prominent, uncontroverted facts will be found necessary to a proper and ready understanding and elucidation of the questions which arise in it for our determination. The position of the buildings burned with reference to one another and the railroad track, is shown by the diagram, made by A. K. Haines, and given in evidence by the plaintiff, and by Mr. Samuel G. Simpson, the owner of all the buildings, and by other witnesses.

" A frame warehouse, 12 feet high to the eve or square, 25 by 47 feet, erected in 1850, stood 15 feet from the railroad track, and parallel with it. The tavern-house, a two-story frame building, 68 by 32, stood west of the warehouse, the lower or east end of it, 39 feet from it. West of the other, or west end of the tavern-house, and separated from it by a seven-feet alley, there were two adjoining dwelling-houses. Back on the turnpike, about the same distance that the tavern stood above the warehouse, there was and is a one-and-a-half story storehouse; and on the turnpike, still further up, 80 or 90 feet from the warehouse, there was a barn, 60 by 29 feet. In the vicinity there was another house, occupied by Mr. Simpson himself. At the time of the fire, about two-thirds of the tavern-house, next the warehouse, and one-half of the barn, were leased to the plaintiff, and occupied and used by him as a tenant, and the property claimed for was consumed with these buildings.

" The other end of the tavern-house was leased to Mr. Shoemaker; the two dwellings above it to other persons, and the storehouse to Mr. Green, and also part of the warehouse; the other part occupied by Mr. Green, who occupied with plaintiff one-half of the barn. On the 28th of April 1868, the day of the fire, the employees of the railroad company were using a locomotive engine, attached to a train of six 'or seven trucks, called the wood or gravel train, carrying ties, past these buildings on the tracks of the road. About the middle of the day they loaded the trucks opposite the frame dwellings above the tavern, and afterwards there fired up the engine, and moved it down the north track, some distance below the warehouse, where they switched on the other track, and backed up past the warehouse with the train. A short time, perhaps about fifteen minutes, after the train passed up, the south side of the roof of the warehouse, next the railroad, was discovered to be on fire in three or four small spots. An early effort to extinguish it probably failed by the breaking of a ladder; and it was soon afterwards enveloped in flames and consumed. The day was warm and dry, and the wind bearing in a strong current, particularly after the fire was fully started, in the direction of the tavern. The part of the burning warehouse, in the direction of the wind, communicated the fire to the tavern-house, which was also burnt, as well as the two frame

· dwellings above it, and also the barn on the turnpike, while the storehouse and the house of Mr. Simpson were saved. These are the general, undisputed facts in relation to the fire and the burning.

" The plaintiff claims that the burning was caused by the sparks from the defendants' engine, negligently emitted, and that the defendants are, therefore, answerable to him in damages. The defendants, denying this, make, in defence, the point that, upon the undisputed facts in the case in relation to the burning, assuming that the warehouse was ignited by sparks from the engine, and that it was chargeable to the negligence of their servants, which is denied—the plaintiff, whose property was destroyed in another building, to which the fire was communicated from the warehouse, and not from the engine, has no cause of action, for the reason that the alleged negligent burning was not the natural and neces- sary result of the burning of the warehouse, and we are asked, as a matter of law, so to instruct you. Since this point, if well made, is decisive of the case, it is proper that we should here first con- sider it. The facts here are uncontroverted and incontrovertible. · The law is asserted to ‿‿, ‿‿‿‿ where the act complained of was not voluntary or intentional, or one of affirmative illegality, but was simply the absence of proper care and caution, and not in itself the subject of criminal complaint, responsibility is not carried beyond the necessary and natural consequences of the act; and that when beyond that, they are or may be modified, or shaped by other causes, they are too remote to be the foundation of legal accountability. For this doctrine fixing a limit to respon- sibility, upon a point in relation to which cases have been decided upon their own facts, upon conflicting reasons, and in relation to which there seems to have been no harmony of decision or any settled rule, the defendants cite and rely upon the recent and carefully reasoned case in the Court of Appeals of the State of New York, of Ryan *v*. The New York Central Railroad, 35 N. Y. R. (8 Tiff.) 210, in which it is ruled that ' the negligently burning of a house, and the spreading of the fire to a neighboring house and the burning thereof, do not give the owner of the last house a cause of action against the owner of the house in which the fire originated,' because ' the damages are too remote."

" ' The question,' says Hunt, J., ' may be thus stated : A house in a populous city takes fire through the negligence of its owner or his servant, the flames extend to and destroy an adjacent build- ing : is the owner of the first building liable to the second owner for the damages sustained by the burning ?'

" ' It is a general rule,' it is answered,' ' that every person is answerable for the consequences of · his own acts. He is thus an- swerable for the *proximate* results of his own acts, but not for remote damages.' After citing a number of cases, establishing the

[Pennsylvania Railroad Co. *v.* Kerr.]

first proposition 'thus far,' the ruling judge says: 'The law is settled and the principle is apparent. If, however, the fire communicates from the house of A. to that of B., and that is destroyed, is the negligent party liable for the loss? And if it spreads thence to the house of C., and thence to the house of D., and thence consecutively through the other houses, until it reaches and consumes the house of Z., is the party liable to pay the damages sustained by these twenty-four sufferers? The counsel for the plaintiff does not distinctly claim this, and I think it would not be seriously insisted that the sufferers could recover in such case. Where, then, is the principle upon which A. recovers and Z. fails?' And the decision is placed upon the ground that, 'in the one case, to wit, the destruction of the building upon which the sparks were thrown by the negligent act of the party sought to be charged, the result was to have been anticipated the moment the fire was communicated to the building; that its destruction was the natural and ordinary result of its being fired. In the second, third and twenty-fourth case, as supposed, the destruction of the building was not a natural and expected result of the first firing. That a building upon which sparks and cinders fall should be destroyed or seriously injured, must be expected; but that the fire should spread, and other buildings be consumed, is not a necessary or usual result. That it is probable, and that it is not unfrequent, cannot be denied. The result, however, depends not upon any necessity of a further communication of the fire, but upon a concurrence of accidental circumstances, such as the degree of the heat, the state of the atmosphere, the condition and materials of the adjoining buildings, and the direction of the wind. These are accidental and varying circumstances. The party had no control over them, and is not responsible for their effects.' The opinion is further sustained by the argument, forcibly illustrated, that 'no such action has ever been maintained in any of the courts of this country, although the occasion for it has been frequent and pressing.' And sustained also by the further argument, illustrated with much force, that 'to sustain such a claim, and to follow the same to its legitimate consequences, would subject to a liability against which no prudence could guard, and to meet which no private fortune would be adequate.'

"Of the English case of Piggott *v.* The Eastern Counties Railway Company, 54 E. C. L. R. 226, cited by the plaintiff's counsel upon this subject, ruled in 1846, we observe that this question was not made or discussed; and that the syllabus and the whole case shows that the controversy there was upon the evidence of negligence, when property had been burned by sparks from a locomotive engine; and even that the rule which it lays down is not the law of this country. There have also been several of our own cases cited, none of which, so far as we have had time and oppor-

tunity to examine them, decide the precise question before us, or lay down any definite rule, to be followed as a rule and as law upon this subject.   It is, in the shape in which it arises, one of first impression here, and one of so much importance as to call for a decision of our Supreme Court.   The most that is claimed for any of our own decisions upon this phase of the question is, that they hold it to be a question for the jury whether the injury on any given case is proximate or remote: 3 P. F. Smith 344. But that is always to be understood of cases where there are controverted facts.   When facts are proven by the party against whom a legal conclusion from them is claimed, or are not controverted, or are admitted, the conclusion is matter of·law upon any and every subject, without exception; and it is for this court to pronounce it.   In Ryan v. The New York Central, the judge of the Circuit nonsuited the plaintiff, and the General Term of the fifth district affirmed the judgment, and that judgment was again affirmed by the Court of Appeals.   There it was not left to the jury.

"It has been urged that the fact that all the buildings consumed in this case belonged to Samuel G. Simpson, distinguishes the present case; but manifestly it does not.   So far as it relates to this question, the possession of the plaintiff as a tenant was as distinct as if he had been the owner of the fee, or as if any one else had owned it instead of Mr. Simpson.   This is not a question of title, and Mr. Simpson is not a party.   If he were, and the New York case under consideration be sound law, and the common-law rule which governs in such cases, he could only recover for the warehouse.   The sparks, if it was fired by sparks from the engine, only fell upon it; and that the destruction of the tavern was not a necessary and natural result is shown by the evidence of the plaintiff, who says, 'we might have saved the tavern-house if the wind had been from the opposite direction; that is, if the wind had blown the fire away from the house, the same as the storehouse was saved.'   If the New York case, therefore, is to be regarded as the law, it rules the point here ; and this case.   And, in the absence of a decision of our Supreme Court, the decision of the courts of a neighboring state, ascertaining a common-law rule, and not ruled upon any local custom or statute, the principle of which we approve, and the reasoning of which we feel unable to answer or resist, is usually regarded as of sufficient authority to rule a case.   Nevertheless, as we regard this a question of great importance, no less to individuals than to railroad companies, one in its present shape of first impression here, and since we have not had time and opportunity to examine all our cases which contain discussions in analogous cases, and which it is claimed hold it to be at least a question for the jury, we reserve the point made by the defendants for consideration hereafter, and

submit the cause as if it had not been made.  Since, too, the cause has been so carefully tried on both sides, irrespective of this question, we are not without hope that the verdict of this jury will virtually settle the controversy, so that, in any result, the parties will not have to encounter the labor and expense of another trial of it here.

"I. The first question, then, gentlemen, for you is, was the warehouse ignited or set on fire by sparks thrown upon it by the defendants' engine, and the fire thence communicated to the tavern-house and the barn containing the plaintiff's property, and his property thus destroyed?

[The court here referred to the evidence relating to the origin and circumstances of the fire; and, expressing the opinion that the weight of it showed that the fire originated from sparks thrown upon the warehouse by the engine of the defendants, submitted the question to the jury.]

"II. If you find that the warehouse was set on fire by the defendants' engine, and the fire thence communicated to the property of the plaintiff, was it done negligently, or was it the result of the absence of that degree of care and caution which the law required the defendants and their employees to exercise?"

[The court here stating the law on the subject to be as asserted in the written points submitted by the plaintiff's counsel, and admitted by the counsel of the defendants, reviewed the evidence upon the question of negligence at length, and submitted it to the decision of the jury.]

"If, gentlemen, you are satisfied from the evidence which you have heard, and which you have heard discussed at length by the counsel of the parties, and to which we have called your attention in a brief review of it, that the fire originated or was caused, as the plaintiff alleges, by sparks emitted from the plaintiff's engine and falling upon the warehouse, and thence communicated to the buildings occupied by the plaintiff, and to his property, and that it was caused by or was the result of the negligence or the want of that degree of care and caution which the law, as we have stated it to you, made it the duty of the defendants or their employees to exercise, then your verdict should be for the plaintiff; and if you find for the plaintiff, we have already instructed you as to the measure of damages.

"If, on the other hand, the evidence does not show, or fails in your judgment to show, negligence, as well as the fact of burning, your verdict should be for the defendants."

The point reserved, which is stated in the body of the charge, is, "Upon the undisputed facts in the case in relation to the burning, assuming that the warehouse was ignited by sparks from the engine, and that it was chargable to the negligence of the defendants' servants, which is denied, the plaintiff, whose property was

[Pennsylvania Railroad Co. v. Kerr.]

destroyed in another building, to which the fire was communicated from the warehouse, and not from the engine, has no cause of action, for the reason that the alleged negligent burning was not the natural and necessary result of the burning of the warehouse."

The jury found for the plaintiff $1959.19, and on the 21st September 1869 the court entered judgment *pro forma*, for the plaintiff on the point reserved, for the amount of the verdict, whereupon this writ of error was sued out by the defendants, who assigned for error that the court erred:

" 1. In not entering judgment in favor of the defendants below upon the point reserved, *non obstante veredicto*.

" 2. In submitting the case to the jury, instead of deciding the question as one of law in favor of the defendants below upon the uncontroverted and admitted fact that the burning of the tavern house and stable was not the direct result of the negligence of the company or their employees in the use of the engine.

" 3. In instructing the jury, 'If you are satisfied, from the evidence which you have heard, and which you have heard discussed at length by the counsel of the parties, and to which we have called your attention in a brief review of it, that the fire originated or was caused, as the plaintiff alleges, by sparks emitted from the defendants' engine, and falling upon the warehouse, and thence communicated to the buildings occupied by the plaintiff, and to his property, and that it was caused by, or was the result of, the negligence, or the want of that degree of care and caution which the law, as we have stated it to you, made it the duty of the defendants or their employees to exercise, then your verdict should be for the plaintiff; and if you find for the plaintiff we have already instructed you as to the measure of damages.' "

*W. Dorris* and *J. G. Miles*, for the plaintiff in error.—The question involved in this case is a difficult one, but it must be admitted that there must, of necessity, be some limit of compensation in cases where positive injury results from an alleged wrong. No human power can trace all the consequences of a wrongful act, and if they could be estimated, the means of no individual or corporation would, in many instances, be adequate for their compensation.

If the injury complained of here had been the result of an act of carelessness by an individual, this suit would never have been brought. No such action has ever been sustained in our courts. An attempt was made, in this state, in the case of McCully *v.* Clarke & Thaw, 4 Wright 399, but it was unsuccessful. We are at all times exposed to such accidents, through the carelessness of our children or domestics. We can guard against them, so far as our own homes are concerned, by insurance, but we have no insurable interest in the property of our neighbors; and if the

rule is to be laid down as contended for by our opponents, we are liable at any time to be ruined through the negligence of those in our employ, against which no forethought could guard.   This is forcibly illustrated in the masterly opinion of Justice Hunt, in Ryan *v.* N. Y. Cen. Railroad Co., 35 N. Y. 210.

The injury here was involuntary, not the voluntary, wilful act of the servants of the defendants.   Can there be a recovery of damages except for the loss of the warehouse?   The destruction of the warehouse was the direct consequence of the alleged negligence.   The burning of the tavern, 39 feet from it, and the stable, 80 feet off, was the remote consequence, caused by a concurrence of other accidental circumstances—the warm, dry day, the strong wind, the degree of heat and the combustible materials of the buildings, over all which the defendants had no control, and for which they are not responsible.   The burning of the tavern and stable was not the natural, necessary or usual result of fire.   A house, nearer to the warehouse than either the tavern or stable, was not injured.

Would it be right to hold the Pennsylvania Railroad Company responsible for the spreading of the fire caused by the force and power of the wind?   This court has already decided the question. " There are often very small faults which are the occasion of the most serious and distressing consequences.   Thus, a momentary act of carelessness set fire to a little straw, and that set fire to a house, and by an extraordinary concurrence of very dry weather and high winds, with this fault, one-third of a city (Pittsburg) was destroyed.   Would it be right that this small act of carelessness should be charged with the whole value of the property consumed?" Lowrie, J., in Morrison *v.* Davis & Co., 8 Harris 176.

If the liability of the railroad company is to be extended beyond the destruction of the warehouse to the wash-house, and then to the tavern house, and then to the two houses across the alley, and then to the stable across the turnpike, upon what principle of law or common sense will the owner of the fence, burned by the sparks a quarter of a mile off, be prevented from recovering damages?

We conceive that the only safe rule is to limit the claim for damages to the immediate result of the injury,   This is the rule which has been adopted in New York.   The question is fully discussed in the case already cited of Ryan *v.* The New York Central Railroad Co., 35 N. Y. 210.

The question involved in this case is one of general importance. Locomotives are constantly running, day and night, through the majority of the towns and cities of the state, and some fixed rule should be established as to the extent of liability in case of damage by fire.   If it should be decided that the party through whose carelessness the fire is caused, is responsible only for the direct and immediate consequences, then owners of property along the

line of railroads will, by insurance, guard against loss. If, however, railroad companies, on the mere suggestion of negligence, to a jury, are to suffer for all the consequences of fire, the result will be that they must cease to run through towns and cities. We trust the court will adopt the rule laid down in our sister state of New York, as the best solution of this troublesome question.

*R. M. Speer* and *R. B. Petrikin.*—The plaintiffs in error rely solely upon the case of Ryan *v.* The N. Y. Central Railroad Co., 8 Tiffany 210, a case which, it is respectfully submitted, is against all the analogies of the law; is wholly unsupported, if not by fair inference, repudiated in England and in this state; and is in direct conflict with the case of the Louisiana Mutual Insurance Company *v.* Tweed, 7 Wallace 44.

This case rules ours. Similar facts appeared in Piggot *v.* The Eastern Counties Railway Company, 54 E. C. L. R. 230.

The railroad company in this case, we contend, was clearly liable for the burning of the hotel and its contents, if their destruction was, under the circumstances, the natural and inevitable result of the negligent burning of the warehouse; and whether it was or not, was a question for the jury.

It is a familiar principle that a man is answerable for such consequences of his unlawful acts as are natural and may be foreseen by ordinary forecast: Scott *v.* Hunter, 10 Wright 194–5.

When we are engaged in an act which the surrounding circumstances indicate may be dangerous to others or their interests, and when the event whose concurrence is necessary to make an act injurious is one which we can readily see may occur under these circumstances, and unite with the act to inflict an injury, we are culpable if we do not take all the care which prudent circumspection would suggest to avoid the injury: McGrew *v.* Stone, 3 P. F. Smith 442.

Where the injury comes from the exclusive negligence of one party, he cannot shield himself from liability by calling it an accident: Beach *v.* Parmeter, 11 Harris 196. The maxim *causa proxima non remota spectatur* means but this: McAfee *v.* Crofford, 13 Howard 447.

In the language of Gibson, C. J., in Lehigh Bridge Co. *v.* L. C. & N. Co., 4 Rawle 25, "The ground work of the common law principle seems to be that some degree of negligence is imputable in every case of accidental fire produced by human means; and it is universally just that a loss shall be borne by him who contributed to it."

In McCully *v.* Clark & Thaw, 4 Wright 406, the action was case for loss by fire, through the negligence of defendants; and Strong, J., says, "It is plain that what is such a measure of care is a question peculiarly for the jury." In this case defendants'

boat burnt, then their warehouse, and then their coal, from which plaintiff's warehouse was burnt.    Same principle affirmed in Lack. & B. Railroad *v.* Doak, 2 P. F. Smith 380.

' The maxim, *sic utere tuo ut alienum non laedas*, applies with peculiar propriety to this class of cases: Bell *v.* McClintock, 9 Watts 120.

The application of the maxim, *causa proxima non remota spectatur*, is often very difficult.    The books contain nc exact rule to determine what is a remote and what a proximate cause: Pittsburg City *v.* Grier, 10 Harris 65.

The Illinois courts have substantially ruled this question in our favor: Bass *v.* Chi. B. & Q. Railroad Co., 28 Ill. R. 17.

And at common law our action clearly lies: Filliter *v.* Phippard, 11 Adol. & Ellis 347; 2 Y. & Jer. 391; Mayne on Dam. 44.

The sentence from Lowrie, J., 8 Harris 176, cited by plaintiff in error, is a mere *dictum.*

Is it too much to ask this court to follow this long line of decisions, instead of the unsupported and solitary decision of Hunt, J. ?

The opinion of the court was delivered, July 6th 1870, by

THOMPSON, C. J.—It has always been a matter of difficulty to determine judicially, the precise point at which pecuniary accountability for the consequences of wrongful or injurious acts, is to cease.    No rule has been sufficiently defined and general as to control in all cases.    Yet there is a principle applicable to most cases of injury which amounts to a limitation.    It is embodied in the common law maxim, *causa proxima non remota spectatur*— the immediate and not the remote cause is to be considered.    Pars. on Cont., Vol. III., p. 198, illustrates the rule aptly by the supposititious case of debtor and creditor, as follows: " A creditor's debtor has failed to meet his engagements to pay him a sum of money, by reason of which, the creditor has failed to meet *his* engagement, and the latter is thrown into bankruptcy and ruined.    The result is plainly traceable to the failure of the former to pay as he agreed. Yet the law only requires him to pay his debt with interest.    He is not held for consequences which he had no direct hand in producing and no reason to expect.    The immediate cause of the creditor's bankruptcy, was his failure to pay his own debt.    The cause of that cause was the failure of the debtor to pay him, but this was a remote cause, being thrown back by the interposition of the proximate cause, the non-payment by the creditor of his own debt."    This, I regard, as a fair illustration of what is meant in the maxim, by the words "*proxima*" and "*remota.*"    See also notes, same volume, p. 180.

In Harrison *v.* Berkley, 1 Strobh. (S. C. Rep.) 548, Wardlaw, J., indulges in some reflections on this point worth referring to in

[Pennsylvania Railroad Co. *v.* Kerr.]

this connection. "Every incident," says he, "will, when carefully examined, be found to be the result of combined causes; to be itself one of various causes, which produces other events. Accident or design may disturb the ordinary action of causes. It is easy to imagine some acts of trivial misconduct or slight negligence, which shall do no direct harm, but sets in motion some second agent that shall move a third, and so on until the most disastrous consequences shall ensue. The first wrongdoer, unfortunate, rather than seriously blameable, cannot be made answerable for all these consequences."

, It is certain, that in almost every considerable disaster the result of human agency and dereliction of duty, a train of consequences generally ensue, and so ramify, as more or less to affect the whole community. Indemnity cannot reach all these results, although parties suffer who are innocent of blame. This is one of the vicissitudes of organized society. Every one in it takes the risk of these vicissitudes. · Wilfulness itself cannot be reached by the civil arm of the law for all the consequences of consequences, and some sufferers necessarily remain without compensation. The case of Scott *v.* Shepherd, 2 Wm. Blac. R. 893, the case of the squib, is sometimes cited as extending the principle of the maxim, but it is not so. The doctrine of proximate and remote causes was really not discussed in that case. One threw a squib in a market-place amongst the crowd. It fell on the stall of one who immediately cast it off to prevent it exploding there, and it struck a third person and exploded, putting out his eye. The question was, whether the defendant could be made answerable in the form of action adopted, which was trespass. De Grey, C. J., held, that the first thrower, the defendant, was answerable, for that in fact the squib did the injury by the first impulse. In this way the action of trespass was sustained. It is no authority against the principle suggested. There must be a limit somewhere. Greenl. in Vol. II., § 256, touches the question thus: "the damages to be recovered must be the natural and proximate consequence of the act complained of." This is undoubtedly the rule. . The difficulty is in distinguishing what is proximate and what remote. I regard the illustration from Parsons already given, although the wrong supposed arises *ex contractu,* as clear as any that can be suggested.

It is an occurrence undoubtedly frequent, that by the careless use of matches, houses are set on fire. One adjoining is fired by the first, a third is by the second, and so on, it might be, for the length of a square or more. It is not in our experience that the first owner is liable to answer for all these consequences, and there is a good reason for it. The second and third houses, in the case supposed, were not burned by the direct action of the match, and who knows how many agencies might have contributed to produce the result. Therefore, it would be illogical to hold the match

chargeable as the cause of what it did not do, and might not have done. The text books, and I think, the authorities agree, that such circumstances define the word "*remota*" removed, and not the immediate cause. This is.also Webster's third definition of the word "remote." The question which gives force to the objection that the second or third result of the first cause is remote, is put by Parsons, Vol. II., 180, "did the cause alleged produce its effects without another cause intervening, or was it made to operate only through or by means of this intervening cause?" There might possibly be cases in which the causes of disaster, although seemingly removed from the original cause, are still incapable of distinct separation from it, and the rule suggested might be inapplicable; but of these when they occur. The maxim, however, is not to be controlled by time or distance, but by the succession of events.

The case in hand is a claim against the defendants under these circumstances, briefly: A warehouse of one Simpson, situate very near the track of the company's road, was set on fire by sparks emitted from a locomotive engine of the defendants, so negligently placed as to set it on fire. The burning of the warehouse communicated fire to a hotel building situated some 39 feet from the warehouse, which, at the time, was occupied by the plaintiff as tenant, and it was consumed, with its furniture, stock of liquors and provisions, and for this the plaintiff sued and recovered below. Several other disconnected buildings were burned at the same time, but this is in no way involved in this case. No doubt the company was answerable for the destruction of the warehouse, resulting from the negligence of the company's servants in the use of the engine. The authority to the company to use steam on their road does not exempt it from liability for injury resulting from the negligent use of it: Lackawanna and Bloomsburg Railroad Co. *v.* Doak, 2 P. F. Smith 379. The learned judge charged that the defendants were liable to the plaintiff to the extent of his loss, by reason of the burning of the hotel, although by fire communicated from the warehouse, if the latter was set on fire by the negligence of the defendants' servants, in the manner mentioned. To this charge the defendants excepted, and assign it for error, and this presents the question of this case.

This charge was of course the equivalent of holding, that a recovery for all the consequences of the first act of negligence of the defendants, was in law allowable. We are inclined to think in this there was error, for the reasons already given, and others that will be given. It cannot be denied but that the plaintiff's property was destroyed, but by a secondary cause, namely, the burning of the warehouse. The sparks from the locomotive did not ignite the hotel. They fired the warehouse and the warehouse fired the hotel. They were the remote cause—the cause of the cause of the

hotel being burned.  As there was an intermediate agent or cause of destruction, between the sparks and the destruction of the hotel, it is obvious that that was the proximate cause of its destruction, and the negligent emission of sparks the remote cause.  To hold that the act of negligence which destroyed the warehouse destroyed the hotel, is to disregard the order of sequences entirely, and would hold good if a row of buildings a mile long had been destroyed.  The cause of destruction of the last, in that case, would be no more remote, within the meaning of the maxim, than that of the first, and yet how many concurring elements of destruction there might be in all of these houses, and no doubt would be, no one can tell.  So to hold, would confound all legitimate ideas of cause and effect, and really expunge from the law the maxim quoted, that teaches accountability for the natural and necessary consequences of a wrongful act, and which should, in reason, be only such that the wrongdoer may be presumed to have known would flow from his act.  According to the principle asserted, a spark from a steamboat on the Delaware might occasion the destruction of a whole square, although it touched but a single separate structure.  No one would be likely to have the least idea of such accountability, so as to govern and control his acts accordingly.  A railroad terminating in a city might, by the slightest omission on the part of one of its numerous servants, be made to account for squares burned, the consequence of a spark communicating to a single building.  Were this the understanding of the extent of liability under such circumstances, it seems to me that there might be more desirable objects to invest capital in, than in the stock of such a railroad.  But it never has been so understood or adjudged.  Lowrie, J., in Morrison v. Davis & Co., 8 Harris 171, illustrates the argument against such liability most strikingly by reference to a well-known fact.  In the case he was treating, a horse in a canal-boat team was lame, in consequence of which the boat was behind time in reaching the Juniata river, and in consequence of that was overtaken by a flood in the river which destroyed the boat with its freight.  The carrier, the owner of the boat, was charged with being negligent in using a lame horse, the occasion of the delay.  In treating of this as only the remote cause of the disaster, the learned judge said : " There are often very small faults which are the occasion of the most serious and distressing consequences.  Thus, a momentary act of carelessness set fire to a little straw, and that set fire to a house, and by an extraordinary concurrence of very dry weather and high winds, with this little fault, one-third of a city (Pittsburg) was destroyed; would it be right that this small act of carelessness should be charged with the whole value of the property consumed ?"  The answer would and ought to be, No ; it was but the remote cause of it.  Innumerable occasions must

have occurred in this Commonwealth for asserting liability to the extent and upon the principle claimed here, yet we have not a solitary precedent of the kind in our books.   This is worth something as proof against the alleged principle.   It was Littleton's maxim, "that what never was, never ought to be:" 1 Vern. 385.

The question in hand has not been adjudicated in this state, and but seldom discussed in any of the other states; yet we have a case decided in the Court of Appeals of the state of New York, in 1866, which is directly in point in support of the doctrine we have been endeavoring to advance above.   It is the case of Ryan *v.* The New York Central Railroad Co. (8 Tiffany), 35 N. Y. 210. The facts in that case briefly were, that the defendant, by the carelessness of its servants, or through the insufficient condition of one of its locomotive engines, set fire to its own wood-shed with a large quantity of wood therein.   The plaintiff's house, situated some 130 feet from the shed, took fire from the heat and sparks of the burning shed and wood, and was entirely consumed.   A number of other houses and buildings were destroyed by the spreading of the fire.   The plaintiff brought suit against the company for his loss.   On the presentation of these facts at the trial, the circuit judge nonsuited the plaintiff, and at the general term of the Supreme Court of the Fifth District, the judgment was affirmed.   The case was then removed to the Court of Appeals, where the judgment was unanimously affirmed in an elaborate and exhaustive opinion by Hunt, J.   Every position taken by the counsel for the defendant in error here was taken there, and examined and answered fully in the opinion.   All the English and American cases supposed to have any bearing on the point in dispute there on the same question we have here, are noticed by him, and the doctrine clearly deduced that the railroad company was not answerable to the plaintiff for the loss of his house being burned by fire communicated by the burning shed.   That case is not distinguishable in principle, or in the manner of destruction, from this.   It is on all fours with this case.

But it seems to have been thought that The Insurance Co. *v.* Tweed, 7 Wal. U. S. Rep. 45, conflicts with the above case.   I do not think it does, when understood.   It was an action on a policy of insurance against fire, in which there was an exception of several matters, viz., invasion, insurrection, military and usurped power, *explosion*, earthquakes, &c.   An explosion took place in a warehouse on the opposite side of the street from the insured property, and scattered fire and burning fragments upon the insured property and destroyed. it.   The decision of the Supreme Court was, that the loss was within the exception of loss by fire occasioned by explosion.   To me it seems that it would have been rather more rational to have held that the destruction was by fire, *per se.*   But the court interpreted the terms of the contract of the parties in this way.   We must remember that

[Pennsylvania Railroad Co. *v.* Kerr.]

there may be a difference between interpreting the obligation of a contract, and defining liability under the law of social duty. Certain it is, the laws are not the same. One does not necessarily rule the other. I may say further, that there is no evidence, in the opinion of Mr. Justice Miller, that he had specially in view the same question, so ably discussed by Mr. Justice Hunt, or if he had, that his investigations extended so far as did those of the last-named judge. He does not even refer to the New York case at all.

The question here involved does not seem to have been definitely determined in England; why, I am at a loss to know. There have been decisions, it is true, imposing liability against the reasons we have expressed above, but in none of them is the question of proximate and remote cause of the injury discussed at all. Such is the case in Piggot *v.* The Eastern Counties Railroad Co., 54 E. C. L. R. 229, cited by the counsel for the defendant in error; and such is the recent case of Smith *v.* The London and South-Western Railway Co., Law Rep., March 1870, p. 98. In this case, Bovill, C. J., and Keating, J., affirmed the recovery. Brett, J., dissented. Both these cases were in the Court of Common Pleas. I find no review of the question in the Exchequer Chamber. I regard these cases as passing over the question that was decided in the Court of Appeals in New York, and which is before us now, *sub silentio.* Hunt, J., expresses, to some extent, my experience, when he says, "I have examined the authorities cited from the Year Books, and have not overlooked the English Statutes on the subject, or the English decisions, extending back for many years. It will not be useful further to refer to the authorities, for it will be impossible to reconcile some of them with the views I have taken." I entirely agree, that if they shed any light, it is too uncertain and dim to be followed with safety; while, on the other hand, the concurrence of principle, with a just measure of responsibility, we think, is best subserved by the rule we suggest. With every desire to compensate for loss when the loser is not to blame, we know it cannot always be, without transcending the boundaries of reason, and, of course, of law. This we cannot do, and we fear we would be doing it, if we affirmed the judgment in this case. The limit of responsibility must lie somewhere, and we think we find it in the principle stated. If not found there, it exists nowhere. We have not been referred to any case, in any of the state courts, excepting those noticed, and I have not myself discovered any, which, in the least, militates against the foregoing views; we are therefore constrained to follow the result of our conclusions, and reverse the judgment in this case. At present we will not order a *venire de novo,* but if the plaintiff below and defendant in error desire, we will order it on grounds shown for it, if made in a reasonable time.          Judgment reversed.