# BRENNAN CONSTRUCTION COMPANY *v.* CUMBER-LAND.*

PROXIMATE CAUSE; TORTS; ESCAPE OF DANGEROUS THINGS; NEGLIGENCE.

1. The escape of petroleum residuum, which is lighter than water, into a river, from tanks located above and near the banks of the river, resulting in injury to boats at a boathouse down stream, is the proximate cause of such injury.

2. A person who places some potentially dangerous substance upon his property—something which, if permitted to escape, is certain to injure others—must make good the damages occasioned by the escape of such substance, regardless of the question of negligence.

3. Where a construction company locates its tanks on the banks of a navigable stream, within the limits of a city, and in the vicinity of boathouses and docks, knowing, or chargeable with knowledge, that if any of the substance contained in the tanks escapes it will find its way into the river, and interfere with public use and enjoyment of the river, it is liable for injuries to boats at one of such boathouses, caused by the escaping substance, irrespective of the question of negligence,—especially where it does not appear that it was necessary to locate the tanks on the banks of the river, and a statute exists prohibiting the pollution of the river by waste products.

No. 1761. Submitted April 9, 1907. Decided May 7, 1907.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia on verdict in an action to recover damages for injury to property.

*Affirmed.*

*See *American Secur. & T. Co.* v. *Lyon,* 21 App. D. C. 122.—Reporter.

The COURT in the opinion stated the facts as follows:

Appeal from a judgment of the supreme court of the District of Columbia, on a verdict for plaintiffs, Robert C. Cumberland and John Otis, trading as John Cumberland & Son, appellees here, for injuries to their boats and other property from petroleum residuum and coal tar, which they alleged defendant, the Brennan Construction Company, a corporation, appellant here, "wrongfully and injuriously permitted to escape into the Potomac river from certain property possessed and occupied by said defendant on the banks of said river."

The appellees at the time of the injury complained of were, and had theretofore been, engaged in the business of hiring, building, and storing boats, and their boathouse was located on the Potomac river, at the foot of F street, N. W. The appellant owns property situated on K street, N. W., in Georgetown, and extending from 31st street to the river, about four blocks above appellees' boathouse. Appellant's premises are located on a side hill which slopes quite abruptly towards the river. Upon these premises, and almost within 200 feet of the water's edge, appellant maintained two large tanks with a capacity of 7,000 gallons each, and kept each constantly filled with petroleum residuum, "or asphalt oil," which appellant there used in making asphalt for use on the streets of the District. This petroleum residuum contains some coal tar, and is a dense, black, adhesive, and oily substance. There was evidence that in 1904 a small quantity of this substance was observed upon the surface of the river in the vicinity of appellant's premises, but that no particular damage then resulted. In 1905, however, the evidence shows beyond question that a large quantity of this substance found its way to the river from appellant's premises, and expanded and extended to a point below the premises occupied by appellees, and remained upon the surface of the water a considerable period of time; and that in consequence appellees' boats and other property were damaged. There was evidence that the "stuff was thick enough to hold a lump of

coal," and that, after it got upon the water, boats had to be cleaned every time they were used.

Appellant admits that in January, 1905, about 1,500 gallons of this substance escaped from one of its tanks through a broken drip valve which was attached to the bottom of the tank for the purpose of drawing off any water that might by chance get into the tank, but contends that said valve was of approved make, and that no negligence attached to the escape of oil on that occasion. Owing to the theory under which the case was submitted to the jury, it is not necessary to inquire whether negligence attached to the escape of oil on this occasion. It is enough to say that the oil found its way to the surface of the river, and that the Brennan Company thereupon gathered up a considerable quantity of it, but permitted the larger part of it to remain. The plaintiff introduced testimony at the trial tending to show that some of the oil found upon the surface of the river came from a waste pipe which extended from the defendant's premises to the water. We will not stop to specially consider this testimony, because the court in submitting the case to the jury made no distinction between the escape from this waste pipe and the escape of the 1,500 gallons in January.

At the close of all the evidence the defendant requested the court to direct a verdict for the defendant. This request being refused, the defendant then requested the court to instruct the jury:

First, that if they found that the oil escaped accidentally from the tank of the Brennan Company, without negligence on the part of said company, and thereafter seeped through the ground, and was discharged into the river, and thereafter found its way to plaintiffs' place of business, plaintiffs could not recover, because the accidental escape of the oil was not the proximate cause of the accident; second, that, if the escape of oil from defendant's premises was due to accidental or unknown causes, and was not due to any negligence or carelessness of the defendant, the plaintiffs could not recover.

These instructions were refused, and the court thereupon instructed the jury that, if they found that the oil which was

stored in the tanks of the defendant company escaped and caused the injury, the plaintiffs might recover regardless of the question of negligence.

*Mr. George E. Hamilton, Mr. M. J. Colbert,* and *Mr. John J. Hamilton,* for the appellant:

1. The escape of oil from a tank on the premises of appellant was not the proximate cause of the appellees' injury. *Milwaukee Co.* v. *Kellogg,* 94 U. S. 475; 21 Am. & Eng. Enc. Law, 2d ed. p. 486; *Hoag* v. *Railroad Co.* 85 Pa. 293; *R. R. Co.* v. *Kerr,* 12 P. F. Smith, 353; *Ryan* v. *R. R. Co.* 35 N. Y. 210.

2. Appellant is not liable as an insurer for the accidental escape of asphalt oil from its premises. The trial court not only refused to instruct the jury as prayed by the defendant, that if the escape of asphalt oil from the defendant's premises was due to accidental or unknown causes, and was not due to any negligence or carelessness on the part of the defendant, then their verdict should be for the defendant, but the court of its own motion charged the jury that it made no difference whether the escape of oil was accidental or due to negligence or carelessness on the part of the defendant; the mere fact of escape, no matter what the cause, rendered the defendant liable. This was error. This statement of the law is substantially that of the leading English case on the point, *Fletcher* v. *Rylands,* L. R. 3 H. L. 330, where, it is believed, was first stated the doctrine of the liability of the landowner as an insurer against damage caused by the escape of a substance collected on his land. The rule of *Fletcher* v. *Rylands* and the court's charge are at variance with fixed principles of the law of torts. *Nitro-glycerine Case,* 15 Wall. 537; Shearm. & Redf. Neg. 5th ed. sec. 16; *Richmond & D. Co.* v. *Elliott,* 149 U. S. 266; 21 Am. & Eng. Enc. Law, 2d ed. 699; Thomp. Neg. sec. 696; *Losee* v. *Buchanan,* 51 N. Y. 476; *Brown* v. *Collins,* 53 N. H. 446; *Marshall* v. *Welwood,* 38 N. J. L. 339; *Penn Coal Co.* v. *Sanderson,* 113 Pa. 126; *Cumberland Phone Co.* v. *United Co.*

42 Fed. 273; *Vieth* v. *Hope Salt Co.* 57 L.R.A. 410; *Murphy* v. *Gillum,* 73 Mo. App. 487; *Huff* v. *Austin,* 46 Ohio, 386; *Cosulick* v. *S. O. Co.* 122 N. Y. 118; *Everett* v. *Hydraulic Co.* 23 Cal. 225; *Texas Co.* v. *Barrett,* 166 U. S. 617; *Hummell* v. *Seventh St. Co.* 20 Or. 401; *Davis* v. *Charleston* (S. C.) 51 S. E. 552; *Young* v. *Bransford,* 12 Lea, 232; *Walker* v. *R. R. Co.* 71 Iowa, 658; *Rockwood* v. *Wilson,* 11 Cush. 221; 8 Harvard Law Rev. 224; *Cork* v. *Blossom,* 162 Mass. 330.

*Mr. Walter C. Clephane* and *Mr. Charles Linkins* for the appellees.

*Mr. Justice* Robb delivered the opinion of the Court:

The first assignment of error relates to the contention that the escape of oil from appellants' tanks was not the proximate cause of the injury. We can find no merit in this assignment. It is a generally accepted and natural law that liquid substances flow down hill. It is in evidence in this case that petroleum residuum is lighter than, and will therefore float upon, water. Considering the location of defendant's premises upon the banks of the river, the location of the oil tanks above and near the river, the fact that the premises of the plaintiffs were located on the banks of the river not far from and below the defendant's premises, that the current of the river would naturally and indeed inevitably almost immediately carry such a substance from the higher to the lower level,—considering all these things, we think it naturally and logically follows that the injury suffered by the plaintiffs was the natural and proximate result of the escape of this large amount of oil. As stated by the Supreme Court, the defendant will be held liable where it appears "that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." *Milwaukee & St. P. R. Co.* v. *Kellogg,* 94 U. S. 475, 24 L. ed. 259.

Counsel for appellant rely upon the case of *Hoag* v. *Lake*

*Shore & M. S. R. Co.* 85 Pa. 293, 27 Am. Rep. 653. In that case plaintiffs' buildings were destroyed by fire, which was communicated to them by burning oil which escaped from a train of oil tanks, as the result of the train being derailed by rocks upon the track, and which ran into a creek near the track, and was carried by the creek some 300 or 400 feet to plaintiffs' premises. The facts in that case are quite different from the facts in this, but, apart from that, the decision followed and was based upon *Pennsylvania R. Co.* v. *Kerr,* 62 Pa. 353, 1 Am. Rep. 431, and *Ryan* v. *New York C. R. Co.* 35 N. Y. 210, 91 Am. Dec. 49, which, as Shearm. & Redf. Neg. vol. 1, ¶ 30, say, "have been overruled everywhere else, and are practically overruled in New York, where they originated." Moreover, these two cases are in conflict with the decision of the Supreme Court of the United States in *Milwaukee & St. P. Co.* v. *Kellogg, supra,* and were there said not to be in harmony with certain cases in the States where they were made, and certainly to be "in conflict with numerous other decided cases." We can hardly be expected, therefore, to follow a rule that has been repudiated by the highest court of the land.

The remaining assignment of error is directed to the ruling that the defendant was liable, whether guilty of negligence or not. Whilst the adjudged cases are not in harmony on this question, we have reached the conclusion that the rule followed by the court below was correct. It is true, as appellant contends, that every person has a right to use his property as he pleases so long as he keeps within the law, and *observes the rights of those around him.* What those rights are depends upon the circumstances surrounding each case. Thus, a farmer may without objection maintain a pigsty, while to do so in a crowded city would be to maintain a nuisance. Notwithstanding that pig raising is a perfectly lawful business, it may only be conducted in such a place and in such a manner as not to offend against the rights of others. Who will attempt to justify the maintenance in a crowded city of a storage house for the keeping of tons of dangerous explosives? And yet the contemplated use of such explosives might be perfectly legal. The objection to

their being kept in bulk in such a place is the potential danger to the public. As civilization spreads and the golden rule becomes more and more the guide of human conduct, the rights of property and the rights of the individual are more and more subordinated to the rights of the public; the rights of the few to the rights of the many. Many things that in the early day would have been regarded as mere favors or privileges to be bestowed or withheld at pleasure are to-day regarded as *rights* which must be respected and protected. And so it has come to pass that many courts have held that a person who places some potentially dangerous substance upon his property—something which, if permitted to escape, is certain to injure others— must make good the damages occasioned by the escape of such substance, regardless of the question of negligence. This rule, we think, is just and equitable. If one of two persons must suffer loss, no good reason can be found why the loss should be charged against the one who has in no way contributed thereto. The leading case upon this subject is the case of *Fletcher* v. *Rylands,* L. R. 1 Exch. 265. In that case the defendant had constructed a reservoir upon his premises, and the water from this reservoir escaped and injured the plaintiff. The court said: "The person whose grass or corn is eaten down by the escaping cattle of his neighbor, or whose mine is flooded by the water from his neighbor's reservoir, or whose cellar is invaded by the filth of his neighbor's privy, or whose habitation is made unhealthy by the fumes and noisome vapors of his neighbor's alkali works, is damnified without any fault of his own; and it seems but reasonable and just that the neighbor, who has brought something on his property which was not naturally there, harmless to others so long as it is confined to his own property, but which he knows to be mischievous if it gets on his neighbor's, should be obliged to make good the damage which ensues if he does not succeed in confining it to his own property. But for his act in bringing it there, no mischief could have accrued; and it seems but just that he should at his peril keep it there, so that no mischief may accrue, or answer for the natural and anticipated consequences. And upon authority,

this we think is established to be the law, whether the things so brought be beasts, or water, or filth, or stenches."

The rule announced in that case has been followed by the Canadian courts, and has been adopted with or without modification by many of the courts of the United States. *Berger* v. *Minneapolis Gaslight Co.* 60 Minn. 296, 62 N. W. 336; *Ottawa Gaslight & Coke Co.* v. *Graham,* 28 Ill. 73, 81 Am. Dec. 263; *Kinnaird* v. *Standard Oil Co.* 89 Ky. 468, 7 L.R.A. 451, 25 Am. St. Rep. 545, 12 S. W. 938; *Shipley* v. *Fifty Associates,* 106 Mass. 194, 8 Am. Rep. 318; *Gorham* v. *Gross,* 125 Mass. 232, 28 Am. Rep. 224, and *Lawson* v. *Price,* 45 Md. 123.

In the present case the defendant company located its plant on the banks of a navigable stream, within the city limits, and in the vicinity of boathouses and docks. It knew, or should have known, that a navigable stream is a public highway, with the enjoyment of which it could not legally interfere. It knew, or should have known, that if any considerable amount of the liquid substance it kept within its tanks escaped it surely would find its way to the river, and as surely interfere with the use and enjoyment of that river by the public. In other words, that it would obstruct traffic and constitute a nuisance. It had knowledge of the congressional intent in respect to the pollution of the river, for Congress had ordained that no person should "allow any tar, oil, ammoniacal liquor, or other waste products" to flow into or be deposited in the Potomac river within the District. Code, sec. 901 [31 Stat. at L. 1336, chap. 854]. Notwithstanding all this, it constructed, almost over the bed of the stream, two large tanks, and stored therein some 14,000 gallons of petroleum residuum, and permitted a considerable quantity to escape to the river, remain thereon for weeks, and injure innocent persons. It admits the escape, but contends it should not be held liable for the consequences without proof of negligence, because it was engaged in a lawful business. Under the circumstances of this case, it is quite clear to us that this contention is not sound. There is no evidence that it was at all necessary to locate this plant on the banks of the river, and common sense tells us that asphalt and petroleum

residuum might have been as successfully mixed in some other place where there would have been no danger of contaminating the Potomac, and impeding traffic thereon. Having deliberately elected to store such a large quantity of such a substance in a location where, if it escaped, the greatest amount of damage would ensue, the company must be charged with the absolute duty of keeping that substance within the limits of its own premises. This it failed to do, and it must now make good the damages which directly ensued.

Supposing these tanks had been placed near one of the streets of the city, and in such a position that escaping oil would flow upon the street; and supposing the company had permitted 1,500 gallons of the thick and adhesive contents to escape and cover the street for several blocks, and remain thereon for several weeks,—is it possible that the company could have escaped liability for special damages sustained by those lawfully passing over the street, by merely showing that it was guilty of no negligence? We think not. And yet the Potomac river is a public highway, and the proof shows that the Brennan Company suffered a considerable portion of that highway, for a considerable period of time, to be covered with this same thick and adhesive substance.

The *Nitro-glycerine Case* (*Parrott* v. *Wells*) 15 Wall. 538, 21 L. ed. 211, is not in point. In that case the express carrier *unwittingly* received for carriage a dangerous explosive, and the court very naturally declined to hold the carrier responsible for the consequences of an accident that followed. There is no analogy between that case and this.

There being no error in the record, the judgment will be affirmed, with costs, and it is so ordered.    *Affirmed.*