# Bartolet, Appellant, *v.* William G. McAdoo, Director General of Railroads.

*Negligence—Railroads—Fires—Sparks—Proximate cause.*

In an action against the director general of railroads for damages caused by the burning of a barn, it appeared that according to the evidence of the plaintiff, a fire was discovered by defendant's employees in the plaintiff's field at a point 75 to 90 feet from the tracks. After the fire in the field had been extinguished another in a barn about 420 feet from the defendant's right-of-way and across a public road was discovered. There was no affirmative evidence that the fire from the field was communicated to the barn, and it was not contended that sparks reached the barn directly from the engine passing 420 feet away. Under such circumstances, the negligence of the defendant was not the proximate cause of the burning of the barn, and it was not error for the lower court to enter judgment non obstante veredicto.

KELLER, J., dissents.

Argued December 3, 1919. Appeal, No. 214, Oct. T., 1919, by plaintiff, from judgment of C. P. Schuylkill County, Sept. T., 1918, in favor of defendant non obstante veredicto in the case of Andrew M. Bartolet v. William G. McAdoo, Director General of Railroads, Sept. T., 1918, No. 112. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Trespass to recover damages for the burning of a barn. Before BECHTEL, P. J.

The facts are stated in the opinion of the Superior Court.

The jury rendered a verdict in favor of the plaintiff for $1,400. Subsequently the court entered judgment for the defendant non obstante veredicto. Plaintiff appealed.

*Error assigned* was the judgment of the court.

*J. W. Moyer,* and with him *G. H. Gerber,* for appellant.

*Otto E. Farquhar,* for appellee.

OPINION BY LINN, J., February 28, 1920:

The single assignment of error complains that the court entered judgment for defendant notwithstanding the verdict for plaintiff, in a suit brought to recover damages resulting from the destruction of a barn or hay shed by fire alleged to have been caused by sparks emitted by the negligent operation of defendant's locomotive. The court followed Railroad Co. v. Kerr, 62 Pa. 353, saying after a long discussion of the subject: "......since it has been held that the authority of that case has not been impaired on the facts contained therein, we feel constrained to apply the rule there laid down to the facts in this case."

It appeared that on the afternoon of a clear, dry, windy day, just after defendant's passenger train passed plaintiff's farm, a fire was observed by defendant's employees in plaintiff's field at a point from 75 to 90 feet from the tracks. The wind was blowing from the track across the field. This fire was extinguished by defendant's employees after an area of about three acres was burnt over. The barn, 420 feet from defendant's right-of-way, was from 50 to 75 feet from the edge of the burnt area and was separated from it by a public road. After extinguishing the fire in the field, the employees started home, when one of them turned around and saw that there was fire on the barn. One of plaintiff's witnesses was asked: "Q. Do you know what started the barn to burn? What started the barn to burn?

A. Which place it started, you mean?

Q. Yes. What caused the barn—what made the barn burn?

A. I don't know that.

Q. You don't know?   Wasn't it the wind carrying the sparks?

A. I can't tell that.

Q. From the field to the barn?

A. I can't tell that the wind carry the sparks to the barn, I can't tell that because I no see."

The engine in passing "would be going down a small grade" and stopped at a station about three quarters of a mile away.   Another of plaintiff's witnesses testified with regard to the train that "they were coming down grade and were shut off to make the stop at the station." He also testified as follows:

"Q. Did you see this train as it passed Bartolett's field.

A. Yes, sir.

Q. How was it being operated then?   Was it puffing hard or pulling hard?

A. No, sir; it was shut off.

Q. Shut off?

A. Coming down grade, shut off.

Q. Coming down grade, just drifting along easy, drifting along without making any noise?

A. Yes, sir.

By Mr. Gerber: Q. Where was it shut off?

A. On the bridge.

Q. How do you know?

A. My work required me to watch the train approaching."

Another of plaintiff's witnesses testified that "it was a minute or two" after the fire in the field was extinguished before he discovered the fire on the barn or shed.

Plaintiff produced evidence that shortly after the train passed, three other fires were found burning near the right-of-way within a mile and a half on either side of appellant's farm.   Defendant recalled a witness, one of its employees, who had been called by plaintiff, who testified that he saw the train drifting past appellant's field, and who said "You don't see smoke or steam when

the train is drifting, especially down that grade there." Defendant also called an inspector who said that he had inspected the spark arrester on this engine on the evening of the day of the fire and that it was in good order and such as was in general use. The engineer of the train testified that in passing appellant's farm, his "engine was shut off." Excepting the railroad employees, no one was seen in the neighborhood at or shortly before the fire in the field was first observed.

The case was tried on the theory, as the court below stated, "that a spark from the engine ignited the grass and that a spark from the grass in turn ignited the roof of the barn and that the fact that the field was ignited at a distance of about 75 feet from the defendant's right-of-way shows that either the engine of the defendant company was not equipped with a proper spark arrester or that it was negligently operated." None of the witnesses saw the engine emit sparks or anything else as the train passed appellant's farm when the "engine was shut off" and the train was "drifting......down that grade there," nor did appellant offer anything concerning the condition of the spark arrester; he contends that because these fires were seen near the right-of-way shortly after the train passed, a presumption arises that the fires came from the engine and that the negligence alleged may be inferred from that unusual occurrence. Assuming for the moment that he may so fix responsibility for the fire in the field which had been extinguished, of what use is that inference or presumption in ascertaining the cause of the fire to the barn? The theory of the trial, as has been stated, was that a spark from the engine ignited the field and then a spark from the field ignited the barn, but there is no evidence that any one saw sparks or fire communicated from the burning field to the barn. In that respect the case differs from Kerr's case (supra), where there was evidence that the fire was communicated from the warehouse to Kerr's hotel, yet it was held that the succession of events following

the operation of the engine lacked such entirety as would justify the conclusion that the legal or probable cause of the burning of the hotel was the operation of the engine; all the more must that be true in this case where there is no affirmative evidence that fire from the field was communicated to the barn, and where it is not contended that sparks reached the barn directly from the engine passing over 400 feet away; it would be mere presumption on presumption, as to which see Railway Co. v. Henrice, 92 Pa. 431 at 434, and Welsh v. Railroad Co., 181 Pa. 461 at 464.

The judgment is affirmed.

DISSENTING OPINION BY KELLER, J.:

There was evidence that after a certain engine belonging to the defendant had made its trip, fire broke out within a few minutes in the adjoining fields at four different places, located within a distance of about three miles. It started in the plaintiff's field about seventy-five feet from the track, and helped by an unusually strong wind, in a few minutes had burnt about three acres of grass. The wind was in the direction of plaintiff's barn and sparks from the field were flying with the wind. The fire in the field was just out when the defendant's employees noticed a small fire burning on the shingle roof of plaintiff's shed across the road and from fifty to seventy-five feet away. This was within twenty minutes from the time the fire was first seen in the field. The plaintiff's family was not at home and there was nothing which could have caused the fire but the sparks from the burning field. The learned trial judge left the disputed facts in the case, including the question of proximate cause, to the jury and their verdict resolved any doubt as to them in favor of the plaintiff. In my opinion, the jury was justified in finding that the fire in the field and its communication to the barn was a continuous succession of events, so linked together that it became one natural whole and constituted one continu-

ous conflagration.    The case is distinguishable in its facts from Penna. R. R. Co. v. Kerr, 62 Pa. 353, and is governed rather by Penna. R. R. Co. v. Hope, 80 Pa. 373; Oakdale Baking Co. v. P. & R. Ry. Co., 244 Pa. 463; and Cook v. P. C. C. & St. L. Ry. Co., 251 Pa. 198.

I would reverse and enter judgment on the verdict.