John T. DAILY, Jr., et al., Plaintiffs
and Counter–Defendants,

v.

EXXON CORPORATION, Defendant
and Counter–Plaintiff.

Civil Action No. 94–1637 (JR).

United States District Court,
District of Columbia.

Jan. 30, 1996.

William B. O'Connell, Arlington, VA, for Plaintiffs and Counter–Defendants.

Cynthia J. Morris, Marianne Mancino Thiede, Piper & Marbury L.L.P., Washington, DC, William J. Stack, Vernon A. Sevier, Jr., Houston, TX, for Defendant and Counter–Plaintiff.

## MEMORANDUM

ROBERTSON, District Judge.

Plaintiffs operated a gas station on their land in the District of Columbia. They bought gasoline from Exxon Corporation and stored it on the property in underground tanks leased from Exxon. When plaintiffs closed the gas station in 1989, Exxon removed the tanks and discovered that they had leaked. Exxon remediated the contamination caused by the leaking tanks. Plaintiffs then took the position that their land had become "unusable." They sued Exxon in Superior Court for the District of Columbia for $250,000, an amount presumably related to the value of the land. Exxon removed the case to this court, alleging diversity, and counterclaimed for its remediation costs.

Now before me is Exxon's motion for partial summary judgment. The motion seeks to dispose of three of plaintiffs' legal theories of recovery: nuisance (Count I), trespass (Count III) and strict liability (Count IV). The motion does not address plaintiffs' negligence claim (Count II) or Exxon's counterclaims. The facts recited in this memorandum are undisputed, and, for the reasons set forth below, defendant is entitled as a matter of law to the dismissal of Counts I, III and IV.

### Nuisance

Exxon argues that only an adjacent property owner may bring an action for nuisance.

■ . In the District of Columbia, a private nuisance is "a nontrespassory invasion of another's interest in the private use and enjoyment of property." *Carrigan v. Purkhiser,* 466 A.2d 1243, 1243 (D.C.1983); *B &*

*W Management, Inc. v. Tasea Investment Co.,* 451 A.2d 879, 882 (D.C.1982) (*both cases citing* Restatement (Second) of Torts, § 821d (1979); Prosser, Handbook of the Law of Torts, § 89, at 591 (4th ed. 1971)). The D.C. cases neither hold nor state that a nuisance claim must arise between neighboring occupiers of property, although the parties in the *Carrigan* and *B & W Management* cases were in fact neighbors. On an undecided issue of common law this court is to look to the law of Maryland, *Gerace v. Liberty Mutual Insurance Co.,* 264 F.Supp. 95, 97 (D.D.C.1966), and under Maryland law it is clear that, to be actionable as between private parties, a nuisance must originate from a neighbor's property, *Rosenblatt v. Exxon,* 335 Md. 58, 642 A.2d 180 (1994). Thus, whether or not Exxon is responsible for the leaking tanks that contaminated plaintiffs' land, it cannot be held liable under the law of nuisance.

### Trespass

■ The tort of trespass in the District of Columbia is the intentional intrusion of a person or thing upon property that invades and disrupts the owner's exclusive possession of that property. *Carrigan v. Purkhiser,* 466 A.2d 1243, 1243 (D.C.1983); *cf.* Restatement (Second) of Torts §§ 158–59 (1965). Plaintiffs' claim that the release of petroleum products amounted to trespass fails to allege the critical element of intent and ignores the undisputed fact that the tanks were placed on the land by agreement.

The further claim that Exxon trespassed when it dug wells and placed "various and sundry equipment" on plaintiffs' property (presumably in order to remediate the pollution caused by the leaking gasoline) is bare-bones pleading that may or may not frame a cause of action for trespass for the period of time when the remediation equipment was on the land. *See* Restatement (Second) of Torts § 160(b) and comment o, at 284, 288 (1965): Irrespective of the possessor's intent, it may be necessary or appropriate for the defendant pursuant to a privilege, to bring a chattel on the possessor's land or to erect a temporary structure there, and it is not trespass unless the defendant fails to remove it

when the privilege ends. The grant of summary judgment with respect to this count will be with leave to amend.

### Strict liability.

█ Plaintiffs invoke the ninety-year-old strict liability rule of *Brennan Construction Company v. Cumberland,* 29 App.D.C. 554 (1907): One who deliberately elects to store a large quantity of a hazardous substance in a location from whence it may escape and cause damage to the property of another is charged with the absolute duty of keeping that substance within the limits of its own premises. Application of that rule to the facts of this case, however, begs the question whether the "premises" was plaintiffs' land or the underground storage tanks.

Again, the answer lies in Maryland law: *Rosenblatt v. Exxon Co.,* 335 Md. 58, 642 A.2d 180 (1994), recently adopted by Judge Urbina in *325-343 E. 56th Street Corporation v. Mobil Oil Corporation,* 906 F.Supp. 669, 676-78 (D.D.C.1995). The Court of Appeals of Maryland concluded in *Rosenblatt, id.* 642 A.2d at 186, that strict liability applies "only to claims by an occupier of land harmed by an activity abnormally dangerous in relation to the area, which is carried on by a contemporaneous occupier of neighboring land." *See 325-343 E. 56th Street,* at 677. *Rosenblatt* further requires that strict liability be limited to defendants who have a right of ownership or control of the land where the abnormal activity was conducted, and that the activity in question must have been related to the defendant's ownership and occupation of the land. *325-343 E. 56th Street,* at 678; *Rosenblatt,* 642 A.2d at 187. That rule obviously does not comprehend a claim like this one, directed to underground storage tanks owned by one who had no right of ownership or control of the land.

In any case, the question of whether the storage of a hazardous substance is "abnormally dangerous" as a matter of D.C. law has been held to depend importantly upon the " 'appropriateness of the activity' to the place in which it was carried on." *E. 56th Street,* at 677-78; *Rosenblatt,* 642 A.2d at 185, 187, *quoting Yommer v. McKenzie,* 255 Md. 220, 257 A.2d 138, 140 (1969). Placement of underground storage tanks may be "abnormally

dangerous" with respect to a surrounding residential area, but not with respect to the land of the very gas station on which they are situated. *See Yommer v. McKenzie,* 255 Md. 220, 257 A.2d 138, 140–41 (1969), *cited in Rosenblatt,* 642 A.2d at 185, 187; *see also Exxon Corporation v. Yarema,* 69 Md.App. 124, 516 A.2d 990, *cert. denied* 309 Md. 47, 522 A.2d 392 (1987).

\*    \*    \*    \*    \*    \*

Defendant's motion for partial summary judgment will be granted. An appropriate order is issued herewith.

### ORDER

For the reasons set forth in a memorandum of the Court issued today, it is this 29th day of January, 1996, ORDERED that:

1. Defendant's motion for partial summary judgment is granted.

2. Counts I, III and IV of the Complaint are dismissed;

3. The parties are directed to meet and confer in compliance with Local Rule 206 and to file the report required by Local Rule 206(d) no later than February 29, 1996.