CASE 70—PETITION ORDINARY—JANUARY 25.

# Kinnaird v. Standard Oil Company.

APPEAL FROM GARRARD CIRCUIT COURT.

1. INJURY TO NEIGHBOR'S SPRING FROM STORING OIL ON ONE'S PREMISES. —Where one stores oil on his premises in such a way that the leaking oil penetrates the ground, and thus pollutes his neighbor's spring, he is liable to his neighbor for the injury that results, although he may have been ignorant of the fact that the oil was affecting the water of his neighbor's spring. While the owner of land may appropriate to his own use hidden or undefined veins of water under his soil, and

Kinnaird v. Standard Oil Company.

thus cut off the supply of water from a neighbor's well or spring, he has no right to contaminate the water so as to render it unhealthy or unfit for use when it reaches his neighbor's land.

2. SAME—MEASURE OF DAMAGES.—Where such an injury does not result in the entire destruction of the spring or the water for use, the criterion of recovery is the actual damage the plaintiff has sustained in being deprived of the use of the water for domestic or farm purposes up to the time of trial. The failure of defendant to take any additional precaution to prevent the flow of oil to plaintiff's spring will subject him to another action.

M. H. OWSLEY, R. H. TOMLINSON AND W. J. LANDRAM FOR APPELLANT.

While the owner of land may appropriate to his own use the underground waters, he is liable if he pollutes or poisons that which is permitted to escape and enter his neighbor's premises, in whatever way it may find its entrance, whether by percolation or in well-defined streams. (Ballard v. Tomlinson, 24 Am. Law Reg., 637-8; Chase v. Sylvester, 62 Maine, 175; Roath v. Driscoll, 20 Conn., 533; Wheatley v. Baugh, 25 Penn. St., 528; Frazier v. Brown, 12 Ohio St., 294; Nat. Law Review, March, 1888, pp. 102, 104; Sanders v. Pennsylvania Coal Co., 27 Am. Rep., 713; Washman v. Sillman, 18 Am. Rep., 247; Wait's Actions and Defenses, vol. 3, 713; Idem, vol. 6, 270; Wood's Law of Nuisances, secs. 443, 436, 507, 512, 122; Washburn on Easements, 594, 451, 442, 452, 463; Halderman v. Breckhart, 45 Penn. St., 514; Smith v. Adams, 6 Paige, 435; Dallam v. Handley, 2 Mar., 418; Fightmaster v. Beazley, 7 J. J. Mar., 411; Easley v. Easley, 18 B. M., 93; Shay v. Richmond & Lancaster T. P. R. Co., 1 Bush, 108; Stephens v. Brooks, 2 Bush, 137; United Society of Shakers v. Underwood, 11 Bush, 276; Hodgkinson v. Ennor, 4 B. & S., 229; Turner v. Mirfield, 34 Beav., 390; Wood on Nuisances, secs. 1, 2; Gould on Waters, pp. 388-9, 482, 485, 493, 494, 495.)

BROWN, HUMPHREY & DAVIE FOR APPELLEE.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellant, Kinnaird, is the owner of a small tract of land containing about four acres, lying adjacent to or within the boundary of the town of Lancaster, in the county of Garrard. On this land is a valuable and never-failing spring that appears upon the surface of the ground at the foot of a hill, and had been used as such for a long period of time.

In November of the year 1886, the appellee, the Standard Oil Company, leased from the Kentucky Central Railroad Company a site upon which to build a warehouse for the storage of its coal oil. They erected the warehouse, and placed in it their coal oil, that leaked from the casks and saturated the ground both on the inside and the outside of the building. The floor of the house consisted of a bed of cinders about twelve inches in depth that supplied the place of plank that, as the proof shows, would become very inflammable when saturated with the oil. The bed of cinders, therefore, rendered the property much more secure than if a floor had been laid in the building. The spring of the appellant is located about two hundred yards from the oil-house of the appellee, with a hill or rise in the ground between the two, and the proof conduces to show that water on the surface of the ground at the oil-house would naturally flow in an opposite direction from the spring, because it is lower than the ground where the spring emerges from the hill. After the oil had been deposited in the building erected for that purpose, it is manifest that it leaked from the casks, and, being of a penetrating character, it passed into the ground and polluted the stream from which the spring of appellant was supplied.

While it is argued that the proof on this subject is by no means satisfactory, we think it apparent from the testimony that the oil mingled with underground currents of water that fed the spring of the appellant and caused the injury. The court below, on hearing the testimony, gave a peremptory instruction to the

jury, on the ground that no action could be maintained for contaminating the subterranean water that flowed into the spring of the appellant, as the appellee had the right, in the exercise of its legitimate business, to build the house and store the oil within it on its own land, although the property of his neighbor was injured by it. If this had been surface water, or a vein of water under ground, with a well-defined and known channel, the right to maintain the action can not be doubted, but as to hidden or unknown veins of water, it is said they belong to the soil, constitute a part of it, and may be used, controlled or removed by the owner in the same manner that he could the soil through which the water percolates or runs.

The theory of the defense is, that this water, being the property of the owner of the land, its use, if not forbidden by law, can not work an injury to his neighbor in the absence of a desire to do so, however great the damage sustained. This view of the legal rights of these parties seems to be sustained by numerous reported cases involving questions analogous in almost every particular, and, if followed by this court, it must be held that the peremptory instruction was proper. The case of Brown v. Illius, reported in 27 Conn., 84, was an action on the case for a *nuisance*, and in the declaration it was alleged that offensive matter in the manufacture of gas, deposited on the surface of the ground, had penetrated into the soil around and adjoining the well, and into the well itself, corrupting the water and rendering it unfit for use. The court, in applying the rule in regard to

subterranean currents, and in discussing the instruction given by the lower court, held that the ownership of the land sanctioned and justified the use made of it by the defendant, and although the latter was injured, if the damage resulted from the mingling of the noxious matter with the underground vein of water, it was an injury without any violation of the plaintiff's legal rights by the defendant, and the latter "*was under no legal obligation* to prevent it in the first instance or a continuance of it *afterwards.*" The rule that gives to the owner of the soil all that lies beneath its surface, whether soil or water, was made to apply in the case cited, with the right of the owner to use it at his pleasure and in any legitimate mode, and the plaintiff denied the right of recovery upon that ground. The case of Dillon v. Acme Oil Company, 56 N. Y. Sup. Ct. (49 Hun.), 565, was where the plaintiff owned two lots upon which he had erected dwellings, and had dug a well on each lot that he used for household purposes. The defendant erected an oil refinery about three hundred feet distant from the lots of the plaintiff, and the oil, leaking on the surface, had penetrated the ground until it reached some underground stream that carried it to the wells of the plaintiff. An injunction was sought, and the relief denied, for the reason that the defendant had the right to use that which he owned for legitimate purposes, provided in doing so he exercised proper care and skill to prevent injury to others, and, as an illustration of the rule, it was then said that he might dig a well or ditch and cut off a hidden stream of water that supplied his neigh-

bor's well, and thereby render it useless. In Blood-good v. Ayres, 108 N. Y., 400, it was also held that no person is liable for interrupting a stream supplying a well or spring unless he knew beforehand where the stream was. We think it well-settled by an unbroken line of authority, that one may divert or consume all the water from underground currents that have no fixed known channels, and appropriate all the water to his own use; and that he is the absolute owner of this water while it remains under his soil, with the right to appropriate it as he pleases for legitimate use, will not be denied. This use or right of property is, however, only temporary, and remains only so long as the water stands on or under his land. He can not follow it when it leaves his premises and passes to the land of his neighbor, and it may, therefore, be said that he has not the absolute title, as each owner of the land is vested with the right to use the water and appropriate the whole of it when it reaches him.

In the case of Upjohn v. Richland Township, reported in 46 Mich., 542, the opinion delivered by Mr. Justice Cooley, it was held to be an established rule, "that owners of the soil have no rights in sub-surface waters not running in well-defined channels as against their neighbors, who may withdraw them by excavations; and, therefore, if no right of action exists for ruining the plaintiff's well by withdrawing the water, it is difficult to understand how corrupting its waters, by a proper use of the adjoining premises, can be actionable, when there is no intent to injure and no negligence," as each act would destroy the well of the plaintiff.

It seems to us, after a careful review of the authorities referred to by counsel for the corporation, all of which are entitled to great weight, that there is a manifest distinction between the right of the owner of land to use the underground water upon it that originates from percolation, or is found in hidden veins, and the right to contaminate it so as to injure or destroy the water when passing to the adjoining land of his neighbor. It is a familiar doctrine, that one must so use his property as not to injure his neighbor; and, because the owner has the right to make an appropriation of all the underground water, and thus prevent its use by another, he has no right to poison it, however innocently, or to contaminate it, so that when it reaches his neighbor's land it is in such condition as to be unfit for use, either by man or beast. One may be entitled, by contract with his neighbor, to all the water that flows in a stream on the surface that passes through the land of both; and, while he can thus appropriate it, he has no right to pollute the water in such a manner as, when it passes to his neighbor, its use becomes dangerous or unhealthy to his family, or to the beast on his farm.

As soon as the water leaves the land of the one who claims the right to use it, and runs on the land of another, the latter has the same right to appropriate it; and, if property, it then becomes as much the property of the last as the first proprietor. The owner of land has the same right to the use and enjoyment of the air that is around and over his premises as he has to use and enjoy the water under his ground. He is entitled to the use of what is above

the ground as well as that below it; and, still, it will scarcely be insisted that he can poison the atmosphere with noxious odors that reach the dwelling of his neighbor to the injury of the health of himself or family; if not, we see no reason why he should be permitted to so contaminate the water that flows from his land to his neighbor, producing the same results, and still escape liability for the damages sustained; and, whether the water escapes the one way or the other, is immaterial. The simple question is, can the owner, with a knowledge of the penetrating character of its oil, and the effects following its leakage, store large quantities of it near the spring of the plaintiff, where the oil is seen in puddles outside of the building, the result of leakage of the casks on the inside, and then resist the claims of the plaintiff, on the ground that it did not know the water was affected by it? The injury has been done, and can it be said that it presents a case of *damnum absque injuria?* We think not. The case of Ballard v. Tomlinson, an English case, reported in 24 American Law Register, 634, contains the correct rule on the subject. In that case, the water in the plaintiff's well was injured by sewage from the defendant's well, and it was held that an injunction to restrain the defendant from so using his well was proper, and the plaintiff entitled also to damages he had suffered by reason of the pollution. While the unlimited right to use the percolating water was conceded to the plaintiff, the right to contaminate the water so as to render it unhealthy or unfit for use when it came to his neighbor's land, was held to be a violation of the plaintiff's right, for

which an action could be maintained. If one has that on his own premises that is dangerous, or a substance that he is constantly using which is liable to escape and injure others, whether above or under the ground, and upon the property of his neighbor, or that which his neighbor has the right to use, he must answer for the consequences. A recovery was had against gas companies in the cases of Ottawa Gas Co. v. Graham, 28 Ill., 74; Pottstown Gas Co. v. Murphy, 39 Pa. St., 257; Gas Co. v. Freeland, 12 Ohio St., 392.

In the case reported in 28 Ill., 74, the Gas Company erected works near the dwelling of Graham, and injured the water in his well by permitting the substances used in its manufacture to permeate the soil and find its way to plaintiff's well. The court told the jury that if such substances did soak into the ground, and permeate and pass along and through the earth, mingling with the water of the well, and did thereby render it nauseous to the taste or unfit for use, the jury should render a verdict for the plaintiff. This branch of the instructions was held to be proper, and no question raised as to the right of recovery, if the jury believed the facts existed, as alleged and proven. In Pottstown Gas Co. v. Murphy, the court held the company answerable for the corruption of the plaintiff's well, by reason of fluids percolating from the works. The entire dominion of the defendant over its property in the present case is undenied; but it had no right, while enjoying its use, although in a legitimate way, to violate, by the manner of its use, the rights of others. It seems to us unreasonable to adjudge that the erection and opera-

tion of gas-works, or buildings for the storage of oil, with the noxious and injurious substances, by reason of the deposit on the surface, permeating the ground, and injuring or destroying the taste or use of water belonging to and on the property of others, is such a legitimate use of one's property and his dominion over it as to preclude any recovery for an injury to the property of his neighbor, however great; and to require a notice that the injury has been inflicted before the action can be maintained, would be to destroy the theory or the principle upon which a recovery in this case is permitted. It is argued that the appellee was ignorant of the existence of the nuisance, or the injury to appellant's spring, and had no right to suppose that its oil was affecting the water in the spring of the plaintiff. This may be so; and, still, the defendant is responsible for the injury, although he was not aware that its neglect in permitting the oil to leak from the casks and stand in pools outside the building had or would work an injury to the plaintiff. If a nuisance, whether neglect or not, the appellee is liable. We have assumed, in the consideration of the questions presented, that the injury complained of resulted from the manner in which the oil was kept in the storehouse of the defendant; but we are not to be understood as taking that question from the jury on the return of the case.

Some question was made in the court below as to the right of the plaintiff, in estimating the value of his spring or the damages occasioned by the act of the defendant, to show that years before he had sold water from it. This testimony was properly excluded. We

do not understand that the injury has resulted in the entire destruction of the spring or the water for use, and for that reason the actual damage is the criterion of recovery—the deprivation of the use of the water for domestic or farm purposes up to the time of the trial. The continuance of the use of the building for the purpose of storing the oil, without any additional protection to the flow of the oil to the spring of the plaintiff, would subject the appellee to another action. We can not well see how the plaintiff can be fully compensated in any other mode; and to make the injury permanent, when it is certainly in the power of the defendant to prevent it, would be subjecting it to the payment of damages, although the beneficial use of the spring had been again restored.

Judgment reversed, and remanded with directions to award a new trial, and for proceedings consistent with this opinion.