BEATRICE GAS COMPANY V. HIRAM R. THOMAS.

FILED JUNE 27, 1894. NO. 5816.

1. **Nuisance:** POLLUTION OF WELL: DAMAGES. One who col-
lects injurious or offensive matter upon his premises, which, by
percolation, transmission through subterranean streams, or oth-
erwise, pollutes his neighbor's well, is liable for the damages
thereby sustained.

2. ———: ———: SCIENTER. It is not necessary for the recovery
of such damages that the fact of the contamination of plaintiff's
well was known by the defendant. It is sufficient that such
contamination was the natural and probable consequence of de-
fendant's acts.

3. ———: ———: DAMAGES. Where an injury of such character
causes permanent and irremediable damage to plaintiff's land,
the plaintiff should recover in one action all damages, present
or prospective; but if the injury was temporary in its character
and capable of being avoided in the future without permanent
injury to plaintiff's land, damages can only be recovered up to
the commencement of the action, the injury then being in the
nature of a continuing nuisance.

4. ———: ———: ———: EVIDENCE. The fact that the injury
could be avoided by digging a new well would not be a bar to
the action, but would be admissible in mitigation of damages
by restricting the plaintiff to such recovery as would compen-
sate him for reasonable expenses incurred in avoiding the injury.

5. **Witnesses:** EVIDENCE OF POLLUTION OF WELL. The plaint-
iff having introduced evidence that other wells in the neighbor-
hood of the source of pollution complained of were likewise
affected, *held*, that evidence on behalf of the defendant to show
that other wells situated at a great distance from such source
were also likewise affected was admissible.

ERROR from the district court of Gage county. Tried
below before BROADY, J.

The facts are stated in the opinion.

*W. S. Summers*, for plaintiff in error:

The petition does not state a cause of action. (*Brown v.*

*Illius*, 27 Conn., 84*; *Terry v. Munger*, 49 Hun [N. Y.], 560; *City of Greencastle v. Hazelett*, 23 Ind., 186; *Ballard v. Tomlinson*, 26 L. R., Ch. Div. [Eng.], 194; *Upjohn v. Board of Health*, 46 Mich., 542.)

If offensive matter percolated from defendant's condense well and polluted the water in plaintiff's well and thereby became a private nuisance, it was a continuing nuisance. (*Sherman v. Fall River Iron Works Co.*, 2 Allen [Mass.], 524.)

Where a nuisance is a continuing one, in consequence of which damages are sustained, recovery is limited to damages which accrued before the action was brought. (*Omaha & R. V. R. Co. v. Standen*, 22 Neb., 343; *Close v. Samm*, 27 Ia., 503; *Nashville v. Comar*, 88 Tenn., 415.)

The manufacture of gas is not a nuisance *per se*. It is a lawful and necessary business. If gas escapes from the mains of a gas company or from its gas works, or if substances escape from its condense well, it is not liable for injuries that may result therefrom, in the absence of proof that it was negligent in the construction or care of its plant. (*Strawbridge v. City of Philadelphia*, 13 Reporter [Pa.], 216.)

Reasonable care was exercised by defendant in the disposition of the waste substances from its gas works. It was not liable for damages alleged to have been sustained by the plaintiff before it received notice of the alleged injury. (*Bartlett v. Boston Gas Light Co.*, 122 Mass., 209; *Holly v. Boston Gas Light Co.*, 8 Gray [Mass.], 123; *Hunt v. Lowell Gas Light Co.*, 1 Allen [Mass.], 343; *Terry v. City of New York*, 8 Bosw. [N. Y.], 504.)

It was the plain duty of the plaintiff to have attempted to secure another supply of water, and to have thus mitigated the alleged damages to his premises. He was not entitled to damages for permanent injuries thereto. (*Long v. Clapp*, 15 Neb., 417; *Chase v. New York C. R. Co.*, 24 Barb. [N. Y.], 273; *Bisher v. Richards*, 9 O. St., 495;

*Campbell v. Miltenberger*, 26 La. Ann., 72; *Terry v. New York*, 8 Bosw. [N. Y.], 504; *Van Pelt v. City of Davenport*, 42 Ia., 308; *Simpson v. City of Keokuk*, 34 Ia., 568; *Barrick v. Schifferdecker*, 123 N. Y., 52; *Nashville v. Comar*, 88 Tenn., 415; Sutherland, Damages, secs. 85, 155.)

*R. W. Sabin* and *J. B. Betts*, contra:

The defendant gas company is liable if it so constructed its cess-pool that the foul and noxious substances therefrom saturated the ground and penetrated the hidden and unknown veins of water feeding the plaintiff's well. (*Kinnaird v. Standard Oil Co.*, 12 S. W. Rep. [Ky.], 937; *Ottawa Gas Light Co. v. Graham*, 28 Ill., 74; *Pottstown Gas Co. v. Murphy*, 39 Pa. St., 257; *Columbus Gas Light Co. v. Freeland*, 12 O. St., 392; *Pensacola Gas Co. v. Pebley*, 5 So. Rep. [Fla.], 593; *Collins v. Chartiers Valley Gas Co.*, 21 Atl. Rep. [Pa.], 147; *Ball v. Nye*, 99 Mass., 582; Wood, Nuisances, secs. 114, 115, 116.)

It was proper to introduce proof of damages up to the time of trial. (1 Sutherland, Damages, pp. 187, 193, 196; 3 Sutherland, Damages, pp. 409–419; *Cooper v. Randall*, 59 Ill., 321; *Hayden v. Albee*, 20 Minn., 159.)

It was unnecessary for plaintiff to give defendant notice before the commencement of the action. (*Bohan v. Port Jervis Gas Light Co.*, 25 N. E. Rep. [N. Y.], 246; *Cooper v. Randall*, 53 Ill., 22; *People v. Detroit White Lead Works*, 46 N. W. Rep. [Mich.], 735; *Susquehanna Fertilizer Co. v. Malone*, 20 Atl. Rep. [Ind.], 900; *Dunsback v. Hollister*, 2 N. Y. Supp. [N. Y.], 94.)

IRVINE, C.

Thomas brought this action against the gas company, alleging that the plaintiff was the owner of a certain lot in South Beatrice and had been such owner for five years, occupying the premises as a homestead; that he dug a well thereon suitable for use; that the gas company operated

and maintained its manufactory one block from the property of the plaintiff; that contiguous to this factory the gas company made a large excavation in the ground reaching into the sand, into which it emptied all the filth and waste coming from its factory, consisting of a deadly and poisonous liquid which was absorbed into the sand and by said sand carried and percolated itself from the cess-pool through the ground to the plaintiff's well, rendering the water therein unfit for use, dangerous, and unwholesome; that by reason of the premises the plaintiff had lost his well, his land had been rendered unfit to make another well, he had been compelled to carry water necessary for household use and for stock for a long distance; that he had expended large sums of money in efforts to remedy the evil; that the value of his property had been destroyed, all to his damage in the sum of $900. The answer amounted to a general denial. There was a trial to a jury and a verdict and judgment for the plaintiff for $453.78, from which the gas company prosecutes error.

The evidence on the trial tended to show that the gas company sank what it calls a "condense well" on its own property at a distance of 492 feet from plaintiff's well; that into this condense well the company permitted to flow certain waste products; that some months after this condense well went into use it was discovered that plaintiff's well was contaminated. Some time afterwards the water became wholly unfit for use. There seems here to be a stratum of sand between beds of rock and clay. The condense well reached the sand. Plaintiff's well passed through the sand and into the rock. The odor of the water in plaintiff's well after its contamination was similar to the odor in the neighborhood of the condense well. The odor resembled that of naphtha, and there was evidence tending to show that the gas company used naphtha in its process. During the trial evidence was introduced tending to show that other wells in the neighborhood of plaintiff had been

contaminated in like manner. The admissibility of this evidence under ordinary circumstances would be at least doubtful, but under the circumstances of this case we think the action of the trial judge was correct. The evidence first came in in connection with proof that the plaintiff was compelled to carry all the water for his household use from a great distance, and he accounted for this fact by proving that a nearer well was polluted in the same manner as his own. Moreover, there were suggestions in the course of the examination of witnesses that plaintiff's well had been polluted by the voluntary act of himself or some other person. After this evidence was in, and near the close of the defendant's case, an effort was made by the gas company to show that a well had been sunk on the opposite side of the river and that the water obtained in that well was contaminated in the same manner. This evidence was excluded. The record does not show how far this well was from the gas works, but it does appear it was in another portion of the city. We think the court should have admitted this evidence. The fact that other wells at a considerable distance were likewise polluted would not conclusively show that the pollution of plaintiff's well was not due to the gas company, but it would tend in that direction, and the greater the distance the stronger the inference would be that the cause in both cases was a general cause affecting the whole region, and not the act of the gas company complained of. We are aware that the introduction of such testimony leads to the danger of introducing collateral issues into the trial. At the same time we think that such evidence was material and, within reasonable limits, should have been admitted, especially as the plaintiff had introduced proof of the contamination of neighboring wells. For this error the judgment must be reversed, but as a new trial must be had it is proper that we should consider the fundamental questions raised by the record.

The gas company contends that there could be no lia-

bility for an injury of the character complained of.  This question is raised by the assignment that the petition does not state a cause of action, and by exceptions to the instruc- tions, which were to the effect that if matter in the condense well percolated through the ground into plaintiff's well, polluting the water, then the condense well was a nuisance, for the maintenance of which the plaintiff was entitled to damages.  The law on the subject, as stated in the adjudi- cated cases, is not in a condition very satisfying to the reason.  The cases are so numerous that a complete re- view would be unprofitable and almost impossible.  We shall select certain cases which are probably those most fre- quently cited and those which have served as landmarks for the discussion.

In a number of cases, of which *Acton v. Blundell*, 12 M. & W. [Eng.], 324, is representative, it has been held that the law in relation to surface water-courses is not applica- ble to subterranean streams, and that a proprietor has no cause of action because of the fact that another, by sinking a well or by the proper opening of a mine, taps a subter- ranean water-course and deprives such proprietor of the water supply for his own well.  This doctrine is put chiefly upon the ground that the existence, course, and ex- tent of a subterranean water-course must be largely un- known; a reason not altogether satisfactory.  In such cases the maxim is applied that the proprietor of land owns from the center of the earth to the heavens.  The applica- bility of this maxim is doubtful, for the reason that it would seem to apply as well to a stream on the surface as to a subterranean stream.  Still we think the doctrine must be accepted because of its firm establishment, and upon the principle that each proprietor is entitled to the use of such streams while on his premises, although the effect of that use may be to diminish his neighbor's use thereof.  To- gether with these cases came a series represented by *Wom- ersley v. Church*, 17 L. T. Rep., n. s. [Eng.], 190, wherein

it was held that a man has no right to place offensive matter upon his land where percolation through the soil takes place, contaminating his neighbor's well, and that for such acts an action may be maintained. In *Ball v. Nye*, 99 Mass., 582, this doctrine was followed where a vault had been constructed from which percolation took place through the soil to the injury of another's well and cellar. Following these cases came a series best represented by *Brown v. Illius*, 27 Conn., 84, and *Ballard v. Tomlinson*, 26 L. R., Ch. Div. [Eng.], 194, wherein it was attempted to reconcile the two classes of cases we have referred to, by drawing a distinction between a percolation through the soil and a contamination produced by means of a subterranean water-course, it being said that if a man had no right of action because his supply of water was cut off by tapping the subterranean stream he could have no right of action because it was polluted through such subterranean stream. This was, we think, a *non-sequitur*. While a man may use water from a stream to the diminution of his neighbor's supply, it does not follow that he may pollute the water and pass it on to him in its polluted state. So in the case of subterranean streams, I have, as much as my neighbor, the right to tap them and use them while they are on my premises, and he cannot complain of that use; but it does not follow that I may contaminate them on my premises and permit the pollution to pass upon my neighbor's. The fallacy referred to drove the courts to the distinction pointed out. The effect of such distinction would give the plaintiff here a right of action, provided he could prove that the offensive matter percolated through the soil to his well without the aid of a subterranean water-course, but would deprive him of his action in case such water-course was a conductor of the offensive matter. It is rather strange that so absurd a distinction should have obtained such strong support in the authorities. It has even received the approval of Judge Cooley in *Upjohn v.*

*Richland Township*, 46 Mich., 542, but that case is not authority in support of the doctrine, for the reason that Judge Cooley's remarks in that case are clearly *obiter* and the case was decided upon other grounds. The fallacy of these cases has recently been recognized by the courts, and the more recent decisions tend strongly to overthrow this doctrine, which seemed in danger of becoming fixed in our law by repeated decisions.

*Collins v. Chartiers Valley Gas Co.*, 139 Pa. St., 111, was a case where the gas company, in digging a well for natural gas, tapped a fresh-water water-course and also a salt water stream. By negligence in its manner of drilling its well the salt water was commingled with the fresh water, injuring a spring of plaintiff. It was held that the defendant was liable because of this unnecessary injury of plaintiff's property.

In *Pensacola Gas Co. v. Pebley*, 25 Fla., 381, *Ballard v. Tomlinson* was distinguished upon the theory that in *Ballard v. Tomlinson* the pollution had been caused by the plaintiff himself in pumping his own well so as to draw water from the other. In drawing this distinction the court went perhaps too far to sustain the English case; but we think the conclusion reached was in accordance with sound principle, to-wit, that it was the duty of the gas company to confine the refuse from its works so that it could not enter upon and injure its neighbors, and if it failed to do so, it was at its peril.

The most satisfactory exposition of the subject which has come to our notice is found in the case of *Kinnaird v. Standard Oil Co.*, 89 Ky., 468, where, after a review of some of the cases already referred to, the court says: "It seems to us, after a careful review of the authorities referred to by counsel for the corporation, all of which are entitled to great weight, that there is a manifest distinction between the right of the owner of land to use the underground water upon it that originates from percolation, or

is found in hidden veins, and the right to contaminate it so as to injure or destroy the water when passing to the adjoining land of his neighbor. It is a familiar doctrine, that one must so use his property as not to injure his neighbor; and, because the owner has the right to make an appropriation of all the underground water, and thus prevent its use by another, he has no right to poison it, however innocently, or to contaminate it, so that when it reaches his neighbor's land it is in such condition as to be unfit for use, either by man or beast. One may be entitled, by contract with his neighbor, to all the water that flows in a stream on the surface that passes through the land of both, and, while he can thus appropriate it, he has no right to pollute the water in such a manner as, when it passes to his neighbor, its use becomes dangerous or unhealthy to his family, or to the beasts on his farm. As soon as the water leaves the land of the one who claims the right to use it, and runs on the land of another, the latter has the same right to appropriate it, and, if property, it then becomes as much the property of the last as the first proprietor. The owner of land has the same right to the use and enjoyment of the air that is around and over his premises as he has to use and enjoy the water under his ground. He is entitled to the use of what is above the ground as well as that below it; and, still, it will scarcely be insisted that he can poison the atmosphere with noxious odors that reach the dwelling of his neighbor to the injury of the health of himself or family; if not, we see no reason why he should be permitted to so contaminate the water that flows from his land to his neighbor's, producing the same results, and still escape liability for the damages sustained; and whether the water escapes the one way or the other is immaterial."

Our conclusion is, therefore, that the distinction made in the earlier cases is not well founded, and that one who collects injurious or offensive matters upon his premises, which, by percolation, transmission through subterranean streams,

or otherwise, pollutes his neighbor's well, is liable for the damages sustained.

The defendant contends that no action will lie for any damages sustained prior at least to the time when defendant had notice of the injury.    We can see no force in this contention.    It is true that some of the cases base the right to recover upon defendant's knowledge that he was committing the injury.    But the injury was as great before as after notice.    An action in tort is not a proceeding to punish a defendant for a willful act but to compensate the plaintiff for the invasion of his rights.    It was not necessary, in order to constitute the pollution of the well a tort, that it should be done willfully.    The most that can be said is that the defendant would not be liable for damages unless the injury was one which was the natural and probable consequence of his acts.    While the defendant may not have known and probably did not know that its condense well would pollute the plaintiff's well, it was bound to know that the natural and probable consequence of collecting waste matter in its condense well would be the injury of some wells which might be connected with the condense well by the stratum of sand referred to.

Complaint is also made of the court's instruction in regard to the measure of damages, for the reason that it allowed the jury to take into consideration all damages sustained to the time of trial.    It was held in *Omaha & R. V. R. Co. v. Standen*, 22 Neb., 343, that a bridge negligently constructed so as to make an unlawful obstruction to the Platte river, injuring land above the bridge, was a continuing nuisance, for which damages could only be recovered to the time that action was brought.    We presume this was upon the theory that there was no permanent injury to the land and that the damages only existed while the bridge was maintained in the manner complained of.    The general policy of the law is to avoid multiplicity of actions and if practicable, without injustice, to afford compensation

in one action for all injuries.   We think the rule is stated correctly in Wood, Nuisances, section 869, as follows: "Where the damages are of a permanent character, and go to the entire value of the estate affected by the nuisance, a recovery may be had of the entire damages in one action.   Thus, in an action for overflowing the plaintiff's land by a mill-dam, the land being submerged thereby to such an extent and for such a period as to make it useless to the plaintiff for any purpose, the jury were instructed to find a verdict for the plaintiff for the full value of the land.   So, too, when a railroad company by permanent erections imposed a continuous burden upon the plaintiff's estate, which deprived the plaintiff of any beneficial use of the portion of the estate so used by it, it was held that the whole damage might be recovered at once; but where the extent of a wrong may be apportioned from time to time, and does not go to the entire destruction of the estate, or its beneficial use, separate actions not only may but must be brought to recover the damages sustained."   There was in the case under consideration evidence that the value of plaintiff's property had been diminished by the contamination of the well.   The inquiry we think should have been as to whether or not the defendant's acts had caused a permanent and irremediable injury to plaintiff's property.   If so, the plaintiff was entitled to compensation in this action for all such injury, present or prospective.   If, on the other hand, the injury was temporary in its character and capable of being avoided in the future without permanent injury to plaintiff's freehold, the case was one of a continuing nuisance, and damages should have been restricted to the commencement of the action.

There is some discussion in the briefs of the law of avoidable consequences as applied to the case.   The court properly refused to instruct the jury that there could be no recovery because plaintiff had not endeavored to pro-

cure a good well upon his premises.    His failure to do so would not be a defense to the action, but would go in mitigation of damages, provided the jury should find that by making another well the injury could be avoided, and it is for the same reason that the plaintiff would be entitled to recover any reasonable expenses he might have incurred in an effort to purify the old well or obtain a new one.

For the errors referred to the judgment must be reversed and the cause remanded.

REVERSED AND REMANDED.