## INJUNCTION AGAINST CONTAMINATION OF PERCOLATING WATERS.

Circuit Court of Cuyahoga County.

IRA BASSETT AND ELLA BASSETT v. IRA OSBORN.

Decided, December 23, 1912.

*Waters—Landowner Enjoined from Contaminating Percolating Waters Feeding Adjoining Landowner's Well or Spring.*

A landowner is liable, if, by the accumulation of filthy or contaminating matter upon his own land, he contaminates the waters percolating therein to the injury of a neighboring landowner whose well or spring subsequently receives the percolating waters so contaminated, and an injunction will be granted to prevent such contamination.

*D. E. Warner,* for plaintiffs in error.
*A. W. Lamson,* contra.

MARVIN, J.; WINCH, J., and MEALS, J., concur.

The facts in this case are, that the plaintiffs own a parcel of land in the village of South Newburgh.    The defendant owns a parcel of land immediately north of the land of the plaintiffs in the same village.

On the land of the plaintiffs is a spring of water which they have protected with a curb made of crocks around an excavation made about the opening of this spring, and placing a spring house over it, using the water for domestic purposes.

The defendant has built into his land, a short distance north of the line between the lands owned by the respective parties, a cesspool. Into this cesspool the refuse from his dwelling, including such refuse from the water closet and bath room, as well as from his kitchen, is conducted and held. This cesspool consists of two excavations in the earth, each extending down below the natural surface about eight or nine feet. Each is about eight feet in diameter; there is a pipe or conduit from one of these excavations to the other about four or five feet above the bottom. One of these excavations is walled up with cement or concrete, with a concrete bottom and is probably water-tight, so that any water or other liquid getting into it must remain therein, except as it may pass into the other through the conduit already mentioned, or be removed from the top. The refuse from defendant's house is conducted directly to this tight pool.

The second of these excavations is lined with brick a part of the way up and with cement the balance. It has no bottom other than the earth itself. This is designated a leeching pool, and the term indicates what its purpose is and what it accomplishes. The water or liquid which enters the first pool passes into the second and leeches through the wall and bottom of that pool into the surrounding earth.

The spring is about 325 feet southwest from the cesspool.

Each of the parties has a house used as a family homestead, the one about a hundred feet and the other about fifty feet west of the west line of Osborn avenue, on the west side of which both properties front. Between the two properties and about on a line extending from one house to the other, is a depression, extending westerly beyond this spring, and opposite to the spring the bottom of this depression is about fifteen feet below the surface on either side. The water from the spring comes out in the south bank of this depression some feet above the bottom of the depression.

There is dispute in the evidence as to the nature of the soil along the north side of this depression, some of the evidence tending to show that there is a vain of gravel in the earth along this line, and other tending to show that the earth is composed exclusively of clay.

The cesspool was in process of construction when this action was begun on the 18th day of June, 1912. The work was suspended because of a restraining order granted by the court of common pleas at the beginning of the action and was not resumed until such order was vacated on the 16th day of July, 1912, when the work was resumed and the double pool completed and in connection with the house made soon thereafter.

The prayer of the plaintiffs is for an injunction restraining the defendant from constructing and maintaining this cesspool, for the reason that the water of the spring is contaminated and rendered unfit for use by reason of deleterious matter escaping from said pool, and flowing into said spring. It is not claimed and surely is not shown that the defendant has constructed this pool carelessly. On the contrary, he took pains to have it done to the satisfaction of the acting health officer of the village, and not only violated no law in its construction, but seems to have done all that could be done to prevent injury to the plaintiffs in error or others, if he is to have a cesspool, out of which the contents could leech into the ground.

Unfortunately, however, the contents do leech through the earth, to such an extent as to render the waters of the spring unfit for drinking and for culinary purposes. We find this as a fact.

It is urged by the defendant that the contents of the cesspool can not, by percolation or otherwise, reach this spring; that the altitude of the spring opening, as compared with the bottom of the depression of the ground between the spring and the side of the depression on which the pool is located, renders this impossible. But notwithstanding this, the fact remains that somehow the contents of the pool do reach the spring. This is shown by the testimony in regard to the analine dying matter which was cast into the pool and was found to have caused a discoloration of the water in the spring, and also by the analysis of the water of the spring made by Mr. Tate, the chemist. He found the water to be pure and sweet before the pool had been used, and to be contaminated with the kind of filth in the pool after the pool was used. We must find either that the plaintiff, Mr. Davis, Mr. Tate and others committed perjury, or that the water of the

spring is contaminated by the pool.   We think the testimony as
to the facts completely outweigh the reasoning as to the improb-
ability of the facts being as testified to.   We think the contami-
nation, too, must come from the percolation from the pool, and
we are brought, therefore, to the question of the right of the
plaintiffs to an injunction to prevent the defendant from per-
mitting the filthy matter to percolate through the earth, to the
injury of the plaintiffs.

Counsel for both sides of the case call attention to the case of
*Frazier* v. *Brown*, 12 O. S., 294.

In that case suit was brought charging the defendant with
having diverted the percolating waters upon his own lands from
finding their way into the lands of the plaintiff and supplying a
spring on the premises of the plaintiff.   To the petition a de-
murrer was filed which was sustained and the Supreme Court
affirmed the sustaining of such demurrer.   The first clause of the
syllabus reads:

"In the absence of express contract and positive legislation as
between proprietors of adjoining lands, the law recognizes no
correlative rights in respect to underground waters percolating,
oozing or filtrating through the earth; hence, where a land owner
digs a 'hole' on his own land for purposes connected with the use
of his own land, thereby cutting off or diverting the underground
waters which have always been accustomed to percolate and ooze
through his land to the land of an adjoining proprietor, and
there to form the source of a spring and rivulet, any damage
thereby occasioned to such adjoining proprietor is *damnun absque
injuria.*"

At the close of the opinion, at page 312, the court used the fol-
lowing language:

"It is hardly necessary to add, that this case does not include,
and, in deciding it, we by no means intend to preclude, questions
which may arise in a class of cases in which a land owner, by
positive acts, poisons or corrupts the waters which percolate from
his lands to those of his neighbor.   Such cases are clearly dis-
tinguishable from this, and to them the considerations of public
policy which govern this case do not necessarily apply."

A large number of cases are cited and many of them quoted
from in the opinion in this case.   An examination of such cases

shows that in each case the matter decided was that the owner of the land through which waters percolate, has a right to use the water for his own purposes, notwithstanding the effect on the adjacent owner may be to deprive such adjacent owner of water which nature would have furnished him, and upon the hearing of this case it is urged that surely if one may wholly prevent the percolating water from escaping from his own land, and thereby deprive an adjacent owner of any use of such water, it must be based upon his right to make such use of the water on his own land as to him shall seem best, notwithstanding such use of such percolating water may send a poisoned or contaminated flow of water upon the land of his neighbor.

We think a distinction can clearly be made between the two propositions. In the one case, the lower proprietor is wholly deprived of the water which would by nature have percolated through the lands of the defendant and into the lands of the plaintiff. In the other, the water is not prevented from going upon the plaintiff's land, but is allowed to go in a state wholly unfit for use, and, in fact, prejudicial to health, if thus used.

Attention is called by counsel for the defendant in this action to the case of *Upjohn* v. *The Board of Health*, 46 Mich., 542. In this action the purpose of the suit was to enjoin the location of a burying ground near the residence of the plaintiff, for the reason, among others, that it would destroy his well. Injunction was denied, and the reasoning of the court in denying it is considered in the case of *Brady* v. *Steel & Spring Co.*, 102 Mich., 277, as a distinction made between the two sets of facts. In this latter case suit was brought against one upon whose premises was kept for use fuel oil, which escaped and percolated through to the premises of the plaintiff. The first clause of the syllabus in this case reads:

"The percolation of deleterious matter, from the premises of the party who suffers it, through the soil, upon the lands of an adjacent owner, to the injury of the latter, is an actionable nuisance."

Without stopping to further discuss this case, we call attention to the Second Edition of Am. & Eng. Enc. of Law, Vol. 30, page 319, where this language is used in the text:

"In some few cases it has been held that as a landowner has the absolute right to appropriate the water percolating under his land, he is not liable for contaminating or polluting such water in the reasonable use of his own land, though thereby a well or spring upon the land of a neighboring landowner is polluted or contaminated.  Still, since one who collects filthy or offensive matter upon his land is required to prevent its escape therefrom, and is liable in damages to neighboring landowners who are injured by the percolation of such matter through the soil, and since this liability does not depend upon negligence, but the reasonable precautions which the law requires must be such precautions as will effectually exclude the filth from the neighbors' land, it is generally held that a landowner is liable in damages if, by the accumulation of filthy or contaminating matter upon his own land, he contaminates the waters percolating therein to the injury of a neighboring landowner whose well or spring subsequently receives the percolating waters so contaminated, and injunctions have been granted to prevent such contamination." .

Numerous cases are cited in the notes fully sustaining the text.

Again on page 321 of the same work, this language is used:

"The artificial collection of waters into large reservoirs has frequently caused injury to neighboring landowners by reason of the percolation of such waters through the ground, and it has been held that the owner of the reservoir is liable for the injuries so caused, without regard to the question whether he was or was not guilty of negligence in the construction of the reservoir."

We call attention also to Section 288 of *Gould on Waters*, which reads:

"The foregoing rules do not apply to cases where a person poisons or corrupts the water which percolates from his land to that of his neighbor.  'To suffer filthy water,' says Foster, J., in *Ball* v. *Nye*, 'to percolate or filter through the soil into the land of a contiguous proprietor, to the injury of his well and cellar, where it is done habitually and with the knowledge of the party who maintains the vault, whether it passes above ground or below, is of itself an actionable tort.  Under such circumstances, the reasonable precaution which the law requires is, effectually to exclude the filth from the neighbor's land; and not to do so is of itself negligence.  In the present instance,

there was no pretense of a sudden and unavoidable accident which could not have been foreseen or guarded against by due care. The percolations appear to have been constant and their existence to have been known to defendant.' In the absence of negligence or knowledge, the same rule of liability would, it seems, apply, he whose filth it is being required to keep it on his premises at his peril. Fouling an underground stream, which flows into the plaintiff's mill stream or colliery, is an actionable injury. When it is clearly proved that a place of spulture or such a structure as a gas reservoir or privy vault will corrupt wells or springs, a court of equity may grant relief by way of injunction, and it appears to be immaterial that the nuisance was existing and noticeable, when the plaintiff dug or built upon his land. If the water of a well is rendered impure by an es-cape of gas therein, the fact that other causes contributed to make it unfit for use is not a bar to an action, but may be shown to affect the amount of damages.''

This is in accord with the holding of this court in the case of *Krazeweski* v. *The Village of Berea,* decided November 12, 1906, in which the following language was used:

''But it is said on behalf of the village that the mere percola-tion or seeping or sewage through the soil to and into another's premises is not an actionable wrong, for the rule is analogous to that of the interception or diversion of percolating natural waters. This question is, however, expressly reserved in *Elster* v. *Springfield,* 49 O. S., 82, 94 and 101, and the clear weight of authority is against the contention made. *Meare* v. *Dole,* 135 Mass., 508; *Beatrice Gas Co.* v. *Thomas,* 41 Neb., 662; 43 Am. St., 611; *Wheatley* v. *Baugh,* 64 Am. Dec., 729; *Kinnaird* v. *Standard Oil Co.,* 89 Ky., 468; 25 Am. St., 545; L. R. A., 451.

From these authorities, and from what seems to us the better reasoning, we hold that the plaintiff in this action is entitled to an injunction perpetually restraining the defendant from per-mitting any part of the contents of the cesspool upon his land to percolate into and upon the premises of the defendant.

Upon motion for new trial it was shown that the filth from defendant's cesspool did not and could not percolate through the soil into plaintiff's spring; that the evidence in the original trial was manufactured for the occasion and false, and so the petition of plaintiff was dismissed.