P. BALLANTINE & SONS, RESPONDENT, v. PUBLIC SERVICE CORPORATION OF NEW JERSEY, APPELLANT.

Argued March 11 and 12, 1914—Decided June 16, 1914.

1. The landowner has not the absolute and unqualified property in all water percolating in his soil and collecting in his wells, to do as he pleases with it, but has the right to its use in a reasonable manner and to a reasonable extent for his own benefit for manufacturing purposes as well as for domestic consumption and the like.

2. A gas manufacturing company has not the right to use its works in the manufacture of gas in such manner as to accumulate polluting matter upon its land and negligently allow it to percolate through the soil and contaminate the well water of its neighbor.

3. The plaintiff, a brewing company, recovered a judgment for substantial damages against the defendant, a gas manufacturing company owning land adjoining the plaintiff's land, for injury to its well water caused by the negligent management of the gas company in permitting tar products to escape from its works and premises so as to pollute and injure the plaintiff's well water; subsequent to the entry of the judgment the defendant paid and satisfied it of record, and the plaintiff brought another suit against the defendant to recover damages for the continuance of the nuisance, and it was *held* that the original nuisance was abatable in character and that the judgment was no bar to the subsequent·action for the new injury.

4. The continuance and every use of that which is, in its erection and *use*, a nuisance, is a new nuisance for which the party injured has a remedy for his damages.

On appeal from the Supreme Court.

For the appellee, *Pitney, Hardin & Skinner.*

For the appellant, *Frank Bergen.*

The opinion of the court was delivered by

VREDENBURGH, J.   The parties to this controversy are each engaged in manufacturing industries of large proportions, in the city of Newark, New Jersey.   Their lands and premises upon which their respective plants are erected adjoin and extend from Front street to the Passaic river.   The plaintiff corporation, under the name of "P. Ballantine & Sons," is a brewing industry, manufacturing malt liquors which are well known in that trade, and command a wide market.   Its success in such manufacture requires the constant use of large quantities of pure, cool water for the proper preparation of its ale and beer.   The water it obtains from its wells in its lands is peculiarly adapted for its use in such preparation.

The defendant gas company manufacture on its lands and premises illuminating gas, and its success in that business necessitates the consumption of large quantities of coal and oil, a residuum of which, after distillation by heat and the purification of the gas sufficient for illuminating requirements, is tar and its compounds.   These, being heavier than water, will, if allowed to escape from the gas holders and receptacles in which they form, sink down into and permeate surrounding soil and underground percolating waters, and are carried thereby to neighboring wells of water.   It is this fact and this penetrating quality of these tar substances to enter into the soil and waters of the plaintiff that has resulted in the injuries which have led to the long-continued litigation between the parties.

The present action was brought in May, 1912, in the Supreme Court by the brewing company against the gas company to recover damages from the latter under allegations of its negligence in so managing its gas plant as to allow these tar products to escape from its premises, and to pollute and

render valueless the plaintiff's property in its well waters. The plaintiff at the Circuit trial had verdict, and judgment was entered thereon against the defendant for substantial damages, and the latter, by appeal, has brought up the record for review.

This judgment is the second the plaintiff has recovered in the Supreme Court against the defendant for substantial damages to the brewing company's well water, alleged to have been caused by tar pollution negligently permitted by the gas company to escape from its premises at the *locus* in question. The record in the evidence before us shows that the plaintiff, on August 27th, 1906, began such a tort action in the Supreme Court and obtained a judgment against the defendant; that a rule to show cause why a new trial should not be granted was, after argument, subsequently discharged by that court, and that in discharging the rule the court rendered an opinion reported in *76 N. J. L.* 358. The defendant made no further contest, but on October 16th, 1913, paid and satisfied that judgment of record.

In passing it is of importance to advert to certain qualifications of the plaintiff's right of property in its subsurface and well waters, which have been held to be limitations upon that right. The plaintiff's claim for damages against defendant in this action is founded upon the latter's *interference with,* and *prevention* of, the *use* by the plaintiff of its well waters for its *manufacturing* purposes. Its right to such use is clear. Since the decision of this court (in 1909) in *Meeker v. East Orange, 77 N. J. L.* 623, it is the settled law of this state that the landowner has not an absolute and unqualified property in all water found percolating in his soil to do what he pleases with it.

Mr. Justice Pitney, in an instructive opinion, there distinguishes between the absolute right of the landowner in such water, under the English doctrine, and his qualified right as settled in this state. He has the right to its use only in a reasonable manner and to a reasonable extent, for his own benefit for domestic purposes as well as in manufacturing, and his own consumption as in agriculture, irrigation and the like,

334    COURT OF ERRORS AND APPEALS.

Ballantine & Sons v. Pub. Serv. Corp.    *86 N. J. L.*

and without undue interference with the rights of other land-owners to the like use and enjoyment of such water.

A terse expression of this principle is found in the old maxim *"Sic utere tuo ut alienum non lædas."* This maxim, it should be observed, has also an apt application to the defendant's conduct of its gas business. It was not privileged to use its own property in the manufacture of gas as it might please, if, in such use, it, by *negligence*, caused damage to the property of its neighbor.

This principle is supported by the leading case of *Marshall* v. *Welwood,* 38 *N. J. L.* 339, followed by *Ulshewski* v. *Hill,* 61 *Id.* 375; *De Gray* v. *Murray,* 69 *Id.* 458.

The main contest of fact at the Circuit in the case *sub judice,* as it was tried out by the parties, centered upon the question whether the defendant had, since August 27th, 1906 (the beginning of the former suit), suffered tar matter to escape and be discharged from its gas works into the wells of the plaintiff.

At the defendant's request the court instructed the jury that the plaintiff could not recover in the suit unless it had shown that oil tar or other soil or water polluting substance had been negligently discharged by the defendant on its own property, or had been negligently allowed by the defendant to escape from its property to or into the property of the plaintiff since August 27th, 1906, the date of the commencement of the former suit.

In response to this instruction, the jury, after they had viewed and examined the defendant's premises (the counsel of both parties consenting to such view and examination), found against the defendant upon this issue—finding as we have the right to assume, that oil tar or other soil or water polluting substance had been negligently allowed by it to escape from its property to and into the property of the plaintiff since August 27th, 1906.

The defendant now attacks the legality of the verdict, not, of course, upon the ground that it was against the weight of the evidence, but upon an insistment that there was *no evidence* whatever, and *no fact* from which the jury could find

that any polluting matter had negligently escaped from its works since August 27th, 1906.

Our examination of the facts in evidence leads us to a contrary conclusion.

To state, very briefly, but a few of the most salient of these facts, they are as follows, viz.: There is the fact that the tar found in great quantities in plaintiff's land and well water, was oil gas tar and coal tar of the same kind produced by the defendant in its works, and that there were no other tar producing works in the vicinity. Professor Pond testified that he found these tar substances (which he subjected to careful scientific tests) in plaintiff's wells in October, 1907, and at various times since August, 1906, until April 7th, 1908, and that so late as February 15th, 1908, upon a hole being dug, in his presence, in plaintiff's premises of about eighteen inches in depth "a stream *of tar came bubbling into the hole* about like spring water * * * that consisted of twenty-five per cent. of tar and seventy-five per cent. water and sand," * * * and that it was "the same sort of tar, water gas tar, tar oil that we had previously obtained from the wells;" the fact that tar was found in the brewery cellar four feet above high tides of the river; the fact that it was found on top of the rocks, and also where the well digger (Conlon) made, after August, 1906, five different borings at depths from thirty-two to fifty feet for wells on the Ballantine property, and found tar in each of the holes bored there, and that in two other of such borings, made in defendant's gas works adjacent to and north of plaintiff's lands on Front street, tar was found at considerable depths; the fact that in July, 1909, the malt house well on plaintiff's premises showed tar pollution; the fact that after August, 1906, defendant's drip pots, carrying tar, continued to empty into the ground.

The appellant's contention, that this tar, since the date in question, was prevented from all leakage from its relief holder and other receptacles, by the excellence and tightness of their cement floors and brick walls, is not sustained by reasonable probabilities. That such tar and its compounds might penetrate through cracks in cement not visible to the eye was the

336    COURT OF ERRORS AND APPEALS.

Ballantine & Sons v. Pub. Serv. Corp.    *86 N. J. L.*

opinion of the expert, Professor Pond. He testified that it is "perfectly well known that concrete may have lots of regular net work with cracks in it yet not be visible to the eye," and that "if such were the case, it would leak water and tar." The jury, who went to the premises in question, and who, presumably, closely examined, by the eye and touch, the cement and brick receptacles, rejected the defendant's contention in this regard. How can we now say they saw no evidence of any cracks in the walls or cement through which the tar liquid had escaped? By their verdict they have declared that they saw evidence of such escape and leakage.

The jury had exceptional opportunities to arrive at a correct result, particularly as to the leakage of the tar receptacles, quite outside of and beyond the testimony of witnesses appearing in the record, and this important circumstance should not be lost sight of in estimating the weight to be given to the inference to be drawn from the verdict of the jury that such fact of leakage had been made manifest to them by their own observation.

This result we also reach from the printed testimony after giving due effect to the importance of defendant's evidence demonstrating that coloring matter placed in the river opposite the wells of the plaintiff can be, and was, pumped by means of its air-lift system of pumping from the river to the wells. We fail to see that such fact excludes the possibility of pollution from defendant's premises. Even admitting that it be true that some coal gas tar pollution, found in plaintiff's well water, came from the contiguous waters of the river, it did not follow that the pollution proved by the plaintiff's evidence to be in its wells did not come from the *defendant's* works. The defendant's proofs did not, we think, negative those of the plaintiff as to the pollution of plaintiff's wells with *oil gas tar peculiar to the kind originating in defendant's works.*

Error, it is also insisted by appellant, occurred on the trial below because the court refused to direct a verdict in its favor, made on the ground that the former recovery of damages by the plaintiff was a bar to any recovery in the present suit.

MARCH TERM, 1914.        337

86 N. J. L.        Ballantine & Sons v. Pub. Serv. Corp.

The appellant's insistment is that the injury at the foundation of the first action for damages was a single tort or nuisance, not abatable, and for which injury the plaintiff could recover damages but once and for all, and that if the nuisance sued for in the first suit was of a permanent and continuing character, the plaintiff must recover in that action all the damages past and future which the maintenance of the nuisance has occasioned and will occasion in the future.

But we think the injury sued for in the former action was not of a permanent character, but was temporary and abatable, and that it was the defendant's duty to abate its continuance, and its failure so to do gave rise to a new cause of action.

The authorities uniformly hold that the continuance and every use of that which is, in its erection and *use*, a nuisance, is a new nuisance for which the party injured has a remedy for his damages. *Staple* v. *Spring*, 10 *Mass.* 74; *Hodges* v. *Hodges*, 5 *Met.* 205.

Every continuance of a nuisance is held to be a fresh one. 3 *Bl. Com.* 220.

In actions for a continued nuisance a judgment recovered in the first cannot have an effect to bar the second, nor to diminish the measure of damages recoverable by it. *Baltimore Railroad Co.* v. *Fifth Baptist Church*, 137 *U. S.* 568; *Troy* v. *Cheshire R. Co.*, 23 *N. H.* 83.

In *Thomas* v. *Beatrice Gas Co.*, 59 *N. W. Rep.* 925, the gas company was sued for damages for permitting injurious matter to percolate through subterranean streams into plaintiff's well, and the court held that the injury was temporary and not permanent in character, and was capable of being avoided in the future without permanent injury to plaintiff's land. Also see case of *Van Vechten* v. *Hudson Railroad Co.*, 92 *N. Y. Supp.* 956.

In *Fairbanks* v. *Bahre*, 213 *Ill.* 636, it was held that a nuisance by offensive odors was temporary in character for which successive actions could be maintained, but that plaintiff could not recover in the action for injury sustained after the institution of the suit.

In *Hatfield* v. *Central Railroad Co.,* 33 *N. J. L.* 251, an action to recover damages for the erection and continuance of a nuisance, it was held that a verdict could not include prospective damages. See, also, *Lewis* v. *Pennsylvania Railroad Co., 76 Id.* 220.

The defendant's argument that because there was evidence of other sources of pollution from the Passaic river that the damages found by the jury to have been inflicted upon the plaintiff's property by the defendant were excessive in amount for the injury sustained by the pollution emanating from its works, cannot be made the proper subject of error in this court (*Jenkins* v. *Pennsylvania Railroad Co.,* 67 *N. J. L.* 331), and we find nothing in the record that discloses any legal error. The judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, JJ.  10.

*For reversal*—None.